## BURNS *vs.* THE STATE.

[INDICTMENT FOR SOLEMNIZING RIGHTS OF MATRIMONY CONTRARY TO LAW.]

1. *Revised Code, §§ 3602 and 3603; unconstitutionality of.*—Sections 3602, 3603, of the Revised Code, which prohibit the inter-marriage of white persons and negroes, and forbids any person, authorized to solemnize the rites of matrimony, to do so in such cases, when applied to citizens of the United States, or of the State, are in contravention of the act of congress of April 9, 1866, known as the "civil rights bill," and repugnant to section 1 of the 14th amendment to the Federal constitution, and to art. 1, § 2, of the State constitution.

2. *Citizenship; what rights confer.*—The promotion to citizenship of persons before excluded, is an admission of them to all the rights and privileges of other citizens in the same manner and to the same extent.

3. *Same.*—The persons who acquired citizenship under the 14th amendment, and the State constitution, can not be distinguished by legislation

from the former citizens, for any of the causes which previously characterized their want of citizenship.

4. *Overruled case.—Ellis v. The State*, 42 Ala. 525, overruled as to this point.

APPEAL from the City Court of Mobile.
Tried before Hon. C. F. MOULTON.

The facts are sufficiently stated in the opinion.

R. & O. J. SEMMES, for appellant.
JNO. W. A. SANFORD, *contra*.

[No briefs reached the Reporter.]

B. F. SAFFOLD, J.—The appellant was convicted and fined under an indictment, charging him as a justice of the peace, with solemnizing the rites of matrimony between a white person and a negro, contrary to the provisions of sections 3602, 3603 of the Revised Code. It is contended for him that these statutes are superseded by an act of congress, passed April 9, 1866, "to protect all persons in the United States in their civil rights, and furnish the means for their vindication;" and also, that they are in violation of both the State and Federal constitutions.

The first section of the act is in the following words : " All persons born in the United States, and not subject to any foreign power, excluding Indians not taxed, are hereby declared to be citizens of the United States; and such citizens of every race and color, without regard to any previous condition of slavery or involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall have the same right in every State and territory in the United States, to make and enforce contracts, to sue, be parties, and give evidence, to inherit, purchase, lease, sell, hold and convey real and personal property, and to full and equal benefit of all laws and proceedings for the security of person and property, as is enjoyed by white citizens, and shall be subject to like punishment, pains and penalties, and to none other, any

law, statute, ordinance, regulation or custom to the contrary, notwithstanding." The second section imposes punishment on any person who, under color of any law, statute, &c., subjects or causes to be subjected, any inhabitant of any State or territory to the deprivation of any right secured or protected by the act.

In *Ellis v. The State*, (42 Ala. 525,) it was held that there is no conflict between this act and the sections of the Revised Code referred to.

Marriage is a civil contract, and in that character alone is dealt with by the municipal law. The same right to make a contract as is enjoyed by white citizens, means the right to make any contract which a white citizen may make. The law intended to destroy the distinctions of race and color in respect to the rights secured by it. It did not aim to create merely an equality of the races in reference to each other. If so, laws prohibiting the races from suing each other, giving evidence for or against, or dealing with one another, would be permissible. The very excess to which such a construction would lead is conclusive against it.

It is self-evident that an inhabitant of a country, proscribed by its laws, approaches equality with the more favored population in proportion as the proscription is removed. The supreme court of the United States, in the Dred Scott case, (19 How. 393,) decided that a free negro, of the African race, whose ancestors were brought to this country and sold as slaves, was not a "citizen" within the meaning of the constitution of the United States. In proof of this, for the constitution did not so declare at that time, Chief Justice Taney, with much stress, referred to the laws of many of the States, prohibiting marriage between such persons and the white population. It can not be supposed that this discrimination was otherwise than against the negro, on account of his servile condition, because no State would be so unwise as to impose disabilities in so important a matter as marriage on its most favored citizens, without consideration of their advantage.

Dred Scott was not allowed to sue a citizen because he was not himself a citizen. One of the rights conferred by citizenship, therefore, is that of suing any other citizen. The civil rights bill now confers this right upon the negro in express terms, as also the right to make and enforce contracts, amongst which is that of marriage with any citizen capable of entering into that relation.

It is no argument against this conclusion that many citizens are debarred from rights and privileges allowed to others, as is the case with married women and children. The power to regulate society is interwoven with the duty to preserve it. But on account of the abuse to which this power is subject, communities, as they increase in knowledge of the science of government, find it necessary to limit and restrain it by provisions of their fundamental law. Whether congress, at the time it passed the civil rights bill, had authority to do so or not, which is gravely questioned in the Dred Scott case, there can be no doubt that its cardinal principle is now declared by the 14th amendment to the Federal constitution. The first section of that article proclaims that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction, the equal protection of the laws." The spirit and express declaration of this section are, that no person shall be disfranchised, in any respect whatever, without fault on his part, except for his own good, reasonably apparent, and that the persons who acquire citizenship under it shall not be distinguished from the former citizens for any of the causes, or on any of the grounds, which previously characterized their want of citizenship. The second section of article 1 of our State constitution, is to the same effect. The indictment fails to charge any offense, and the facts set

forth in it show that no prosecution can be sustained against the defendant.

The judgment is reversed, and an order will be made in this court to discharge the accused.