THE STATE, *Appellant*, v. JACKSON.

1. **Intermarriage between Whites and Negroes:** CONSTITUTION-
AL LAW. The act making intermarriage between white persons and
negroes a felony, (R. S., § 1540,) is no violation of the 14th amend-
ment of the Constitution of the United States.

Neither is that clause of the act which provides that the jury
trying a party accused of such a marriage, may determine the pro-
portion of negro blood in either party to the marriage from the ap-
pearance of such person, a violation of that clause of section 53,
article 4 of the constitution of Missouri, which provides that "the
general assembly shall not pass any local or special law regulating
the practice or jurisdiction of or changing the rules of evidence in
any judicial proceeding."

2. ———— : ————. "The privileges and immunities of citizens of the
United States" protected by the 14th amendment, are such as are
secured to them by the Constitution of the United States and laws
enacted in pursuance thereof, and the right of unrestricted mar-
riage is not among these.

*Appeal from Cape Girardeau Circuit Court.*—HON. D. L.
HAWKINS, Judge.

REVERSED.

*D. H. McIntyre*, Attorney General, for the State.

*B. H. Whitelaw* for respondent.

HENRY, J.—At the May term, 1880, of the circuit court
of Cape Girardeau county, the defendant, a white woman,
was indicted for having intermarried with Dennis Jackson,
a person having more than one-eighth part of negro blood.
A demurrer was sustained on the ground that the law on
which the indictment was based, section 1540, Revised
Statutes 1879, is in conflict with the 14th amendment of
the Constitution of the United States, as also with the 17th
subdivision of section 53 of article 4 of the constitution of
this State.

Section 1540, Revised Statutes 1879, is as follows:
"No person having one-eighth part or more of negro blood

shall be permitted to marry any white person, nor shall any white person be permitted to marry any negro or person having one-eighth part or more of negro blood; and every person who shall knowingly marry in violation of the provisions of this section, shall, upon conviction, be punished by imprisonment in the penitentiary for two years, or by fine not less than $100, or by imprisonment in the county jail not less than three months, or by both such fine and imprisonment; and the jury trying any such case may determine the proportion of negro blood in any party to such marriage from the appearance of such person."

We are unable to perceive any conflict between that section and the clause of our State constitution which declares that: "The general assembly shall not pass any local or special law regulating the practice or jurisdiction of or changing the rules of evidence in any judicial proceeding or inquiry before courts   *   *   ." It did not change the practice or jurisdiction or rules of evidence in any judicial proceeding or inquiry before any judicial tribunal. Besides, it is not a special or local but a general law, embracing all citizens of this State, white as well as black.

It may interfere with the taste of negroes who want to marry whites, or whites who wish to intermarry with negroes, but the State has the same right to regulate marriages in this respect that it has to forbid the intermarriage of cousins and other blood relations. If the State desires to preserve the purity of the African blood by prohibiting intermarriages between whites and blacks, we know of no power on earth to prevent such legislation. It is a matter of purely domestic concern. The 14th amendment to the Constitution of the United States, to which, by some, magical power is ascribed, has no such scope as seems to have been accorded to it by the circuit court. It declares that: "All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the state where they reside;" and that: "No

state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

Every Chinaman, Indian and Hottentot born in the United States and subject to its jurisdiction, is, under the definition of a citizen, contained in the 1st section of the amendment, a citizen of the United States; and under the general, sweeping declarations of the latter clause of that section it is necessary to determine what are the privileges and immunities of citizens of the United States. They are those secured to them by the Constitution of the United States and laws enacted in pursuance thereof. All of one's rights as a citizen of the United States will be found guaranteed by the Constitution of the United States. If any provision of that instrument confers upon a citizen the right to marry any one who is willing to wed him, our attention has not been called to it. If such be one of the rights attached to American citizenship all our marriage acts forbidding intermarriages between persons within certain degrees of consanguinity are void, and the nephew may marry his aunt, the niece her uncle, and the son his mother or grandmother.

The act in question is not open to the objection that it discriminates against the colored race, because it equally forbids white persons from intermarrying with negroes, and prescribes the same punishment for violations of its provisions by white as by colored persons, and an act of congress interfering with such legislation and declaring that it should be lawful in Missouri for a black man and a white woman, or a white man and a black woman, to intermarry, would be without any binding force, because wholly unauthorized by any provision of the Constitution of the United States. In the *Slaughter House Cases*, 16 Wall. 36, the Supreme Court of the United States said with reference to the 5th section of the 14th amendment: "We doubt very much whether any action of a state, not directed by way of discrimination against the negroes as a class, will ever be held to come within the purview of this provision." In *Minor*

12—80

*v. Happersett*, 21 Wall. 162, that court held that " the 14th amendment of the Constitution of the United States does not add to the privileges or immunities of citizens but only furnishes additional protection for the privileges already existing," and neither in the letter nor spirit of the consti tution can a citizen find his right to intermarry with any one whom he may select who is willing to accept him. The power of each state to regulate and control marriages within its jurisdiction, is as unquestionable as state sover-eignty, and, as was observed by Buskirk, J., in the *State v. Gibson*, 36 Ind. 389; *s. c.*, 10 Am. Rep. 42 : " If the fed-eral government can determine who can marry in a state, there is no limit to its power. It can legislate upon all subjects growing out of this relation. It can determine the rights, duties and obligations of husband and wife, parent and child, guardian and ward. It may pass laws regulating the granting of divorces. It may assume, exercise and ab-sorb all the powers of a local and domestic character. This would result in the destruction of the states." 1 Bishop on Marriage and Divorce, (4 Ed.) § 87; *State v. Kennedy*, 76 N. C. 251; *s. c.*, 22 Am. Rep. 683.

It was held in *Burns v. State*, 48 Ala. 195; *s. c.*, 17 Am. Rep. 34, that a statute of that state imposing a fine upon a justice of the peace for solemnizing the rites of matrimony between a white person and a negro, was abrogated by the 14th amendment of the Constitution of the United States, but that decision is in conflict not only with the weight of authority on the subject elsewhere, but with a decision of the same court, reported in 42 Ala. 525, *Ellis v. State*.

If that amendment does not add to the privileges or immunities of citizens, in what other section of the consti-tution will the right of a white man to marry a negro woman, or a negro man to marry a white woman be found ? Marriage acts similar to the one under consideration were in force in most of the slave-holding states prior to the adoption of the 14th amendment, and their validity was never questioned, (*United States v. Stanley*, 109 U. S. 3 ; *s.*

*c.*, 22 Am. Law Reg. 790;) no one supposing that there was, prior to that amendment, any provision of the federal constitution with which they were in conflict, and it is only by ascribing to that amendment a force and scope expressly denied it by the Supreme Court of the United States that any ground exists for questioning their validity now. Nor is it one of the natural rights of man to marry whom he may choose. Under the Jewish dispensation persons nearly related by ties of blood intermarried, but in no Christian land are such marriages tolerated. The right to .regulate marriage, the age at which persons may enter into that relation, the manner in which the rites may be celebrated, and the persons between whom it may be contracted, has been assumed and exercised by every civilized and Christian nation; and the condition of a community, moral, mental and physical, which would tolerate indiscriminate intermarriage for several generations, would demonstrate the wisdom of laws which regulate marriage and forbid the intermarriage of those nearly related in blood. It is stated as a well authenticated fact that if the isssue of a black man and a white woman, and a white man and a black woman, intermarry, they cannot possibly have any progeny, and such a fact sufficiently justifies those laws which forbid the intermarriage of blacks and whites, laying out of view other sufficient grounds for such enactments.

The judgment of the circuit court is reversed and the cause remanded. All concur.