## EX PARTE L. K. POWELL.

### Decided January 29, 1902.

**1.—Selling Pools on Horse-Racing.**

Under the laws of this State, horse-racing is· legal and betting thereon is lawful. Moreover, pools on the selling of bets on horse-racing is legalized by the occupation tax of 1897. Acts 25th Leg., Spec. Sess., p. 51, subdiv. 18.

**2.—Municipal Charters and Ordinances.**

A municipal corporation can only exercise such powers in passing ordinances as are granted in its charter by the State, and only such powers and rights can be exercised under charters as are clearly comprehended within the words of the grant or derived therefrom by necessary implication. It can not exercise an authority which repeals a State law.

**3.—Same—Conflict with State Laws.**

Where there is an apparent conflict between a city charter and the State law on a subject, it is the duty of the court to reconcile such conflict if it can be done, and apply the law to those things which the municipality can prohibit without the repeal of the State law on the subject.

**4.—Same.**

Where a city charter among other things conferred the power to suppress "pool-selling," this authority would only relate to such other pools, and there are many, as are not authorized under the laws of the State. It can not relate to selling pools upon horse-races, which is legalized by our occupation laws.

**5.—Same—"General Welfare" Clause.**

Where the power of a municipal corporation to enact a law must be clearly expressed or necessarily implied in the charter, it is not a safe or sound doctrine to invoke authority under a general welfare power to do anything which may appear to the council to be for the peace and good order of the municipality.

From Jefferson County. Original application for habeas corpus to be relieved from arrest by the city marshal for a violation of a city ordinance against pool-selling on horse-racing.

*W. H. Pope* and *Watts, Chester & Ellison,* for relator.—The ordinance is void because of the want of power, under its charter, in the city council of Beaumont to pass the same; because the language of said charter under which such power purports to have been exercised (1) does not include the power to prohibit the acts prohibited by said ordinance and particularly "turf exchanges;" (2) such language is too vague and indefinite to grant such power to prohibit the acts prohibited by said ordinance, because the charter does not define who are meant and intended by the words "pool-sellers," and does not include the words "turf exchange;" and (3) does not contemplate the power to pass such ordinance or to prohibit the acts thereby prohibited.

1. Charter powers are strictly construed. The power to make penal an act which is otherwise lawful can not be implied but must be expressly conferred, assuming that the Legislature has power so to do. Ex parte Garza, 28 Texas Crim. App., 381, 384; Ex parte Robinson, 30 Texas Crim. App., 493-495; Davis v. State, 2 Texas Crim. App., 425-429; Chiles v. State, 1 Texas Crim. App., 27; French v. State, 14 Texas Crim. App., 76.

2. A charter provision which contains the power in the council to pro-

hibit "pool-sellers" without defining who constitute "pool-sellers," and without the power in the council to define the persons contemplated, and an ordinance passed without express charter power, prohibiting the keeping or carrying on of "turf exchanges," without defining what constitutes a "turf exchange," are too vague and indefinite to be enforcible, because unintelligible. Ex parte Bell, 22 S. W. Rep., 1040; Penal Code, secs. 6, 9.

3. The charter power granted to the city council to pass penal ordinances will be construed in connection with the Penal Code of the State; and the language will be further construed in connection with the associated words, and will not include the power to denounce acts which are licensed by the general law of the State; and special words, which in an extended and liberal sense would include such acts, so licensed, will be construed in connection with and limited by the associated words in the charter, especially when such construction would exclude the power to prohibit the acts licensed by the general law. Flood v. State, 19 Texas Crim. App., 584; Bohn v. State, 21 Texas Crim. App., 597; McClain v. State, 31 Texas Crim. Rep., 558-561.

Without reference to the higher law invoked in our subsequent assignments and propositions, we believe, in full confidence, that the charter power is too vague and indefinite to include the acts defined by the ordinance, and that the ordinance itself, in so far as it prohibits the carrying on of a "turf exchange," is itself too vague and indefinite, in that it does not define what constitutes such keeping or carrying on, aside from the fact that the charter itself is silent as to "turf exchanges," and what constitutes a "turf exchange."

We respectfully ask the court what is meant in the charter of Beaumont by the words "pool sellers"? The charter itself nowhere defines these words, nor is power granted to the council to define them. Now, we respectfully submit that these words have no well known meaning in the law by which your honors or any other court can interpret the scope of the language and define exactly what powers it was intended to grant. The words are meaningless. The word "pool" is one of many significations. In that language, in common parlance, we hear of railroad "pools." We also frequently hear of the game of "pool" played on a billiard table. And again the word "pool" in another sense has been defined to be "a combination of stakes, the money derived from which goes to the winner." Commonwealth v. Ferry, 146 Mass., 203. Now here we have the definition of "pool" in one sense. But what is the definition of "pool-seller"? Now, we submit that it is well settled law in this State that no man can be held to answer to a criminal offense unless the acts constituting such offense are defined by law in plain and unambiguous terms. When a charter grants power to a city to punish men for certain acts the charter power must be plain and unambiguous in itself, and the Legislature can not delegate to the municipal council the power to interpret the scope and meaning of the language. What we say here with reference to the words "pool-sellers" applies with equal, if not with greater,

force to the words "turf exchange," which are not found in the charter themselves, but which are found in the ordinance without any definition whatever. The inquiry naturally arises, what constitutes a turf exchange, and what acts constitute the carrying on of a turf exchange? But we respectfully submit that the language of the charter, if it has any meaning at all, has to be construed in the light of the associated language under the maxim, "Noscitur a sociis." The language of the charter surrounding the words "pool-sellers" are "gambling houses," "keepers of gambling houses," "persons who play at cards or games or who sell lottery tickets or advertise lottery drawings or schemes and the results or drawings of lotteries." Now, do not these associated words most clearly contemplate that whoever are to be deemed "poll-sellers" are such persons as are engaged in some immoral enterprise similar to gambling houses, gaming and lotteries? How can such language be construed to include such persons as are engaged in a lawful business licensed by the general law itself? By the general law as we will see hereafter it is expressly provided by subdivision 18 of article 5049, Revised Statutes: "Pools.—From any person or persons who shall sell pools on horse-races or other contests, five dollars for each and every day they may so sell said pools." Now, it is to be observed that the State law itself defines what character of "pools" or "pool-sellers" it licenses. This, then, is a lawful and not an immoral occupation, and therefore can not be held to be of the same class of "pool-sellers," if any other there may be, whose occupation is akin to gambling and lotteries, etc. That horse-racing is not unlawful has been long well settled in Texas. Commencing with Dunman v. Strother, 1 Texas, 91, there have been a number of cases to that effect, down to and including Walker v. Armstrong, 54 Texas, 615. In the last case Judge Quinan says: "The objection made to the judgment because of the immorality of horse-racing was properly overruled. Horse-racing is not unlawful. Wagers are recoverable made upon them." Now it is very manifest from the ordinance itself that the only acts there defined and denounced constitute a betting upon horse-races. If the words "turf exchange" have any meaning, they simply mean a place where bets are taken upon the "turf." That is, upon contests of horse-races. The other sections of the ordinance, in so many words, contemplate the accepting of bets upon horse-races. The ordinance itself is but an attempt to prohibit those acts which are lawful and not immoral in themselves, as has been repeatedly decided by the Supreme Court of this State, and acts which are themselves licensed by the State and made a source of revenue by the State itself. But this feature of the ordinance will be construed in our second assignment. In conclusion of this argument on the construction of the language and scope of the charter provisions in question, we believe that the doctrines of Chiles v. State, 1 Texas Criminal Appeals, 27, and French v. State, 14 Texas Criminal Appeals, 76 are decisive. In these cases acts of the Legislature themselves are construed, and there it was held that the Legislature itself could not be understood as having intended to prohibit an act which it had denounced in one provision and

which by another provision it licensed and made lawful. Now, we respectfully submit that the Legislature will not be understood as having intended by the language employed in the Beaumont charter to give it such power to suppress these acts from which it derives its revenue. Such intention, if the power could be constitutionally conferred, would have to be expressed in language so plain and unequivocal that there would be no need for construction. So far, however, from the charter conferring upon the city council power to suspend the State law, we respectfully submit that the language of the charter itself negatives that idea. The language to pass the ordinances there mentioned expressly says that the power shall be to pass such ordinances "under the State law." Now, we submit that this language does not confer power to pass ordinances in conflict with the State law.

Section 2 of the ordinance is an attempt under the guise of regulating saloons to carry out the manifest purpose and object of the ordinance to suppress selling of pools on horse-races. It is not a regulation of saloons within the purview of the charter powers, and is itself in contravention of article 3380, Revised Civil Statutes of Texas, and of a common right.

1. The power to regulate does not include the power to prohibit.

2. A regulation of a business is a provision pertaining to the conduct and internal management of the business regulated, and the prohibition is another distinct and lawful occupation in a saloon; is not a regulation of the saloon.

3. Where powers of regulation are to be exercised "under the State law," any regulation in conflict with a State law is impliedly inhibited. Rev. Stats., art. 3380; Ex parte Robinson, 17 S. W. Rep., 1057; 20 Am. and Eng. Enc. of Law, p. 723.

It seems that the language of the charter was studiously framed with the idea of restraining the corporate powers within the laws of the State. Section 33 expressly so provides, and section 43 expressly stipulates that the ordinances shall not be repugnant to the State laws. There is no power to be found to regulate or locate pool-sellers. The power of location and regulation pertains to saloons, etc. By article 3380 of the Revised Civil Statutes the law prohibits certain games to be maintained in saloons, and thereby, under the maxim "Expressio unius est exclusio alterius," impliedly sanctions all games or acts not thereby prohibited. The only acts or games prohibited by the article are such games or acts as are prohibited by law. The selling of pools on horse-races is a lawful business. Its prosecution is a common right, and under the doctrine of Ex parte Robinson the council can not restrict or curtail under the guise of regulating another business. The ordinance is not a regulation of the saloon. 20 Am. and Eng. Enc. of Law, p. 723. It is a prohibition of the business of pool-selling on horse-races, which is licensed by law, a source of revenue to the State, and the exercise of which is a common right. Section 2 is but a continuation of the purpose expressed in sec-

tion 1, the whole purview of the ordinance being manifestly to prohibit pool-selling on horse-races.

The ordinance of December 3, 1901, is unconstitutional, null and void, because it is in conflict with and repugnant to the general statutes of the State of Texas licensing the acts prohibited by the ordinance; and the charter power, if any, is an attempt upon the part of the Legislature to confer power on the city council to suspend the general laws and to deprive the State of the revenues thereby derived.

The Legislature, since the Constitution of 1876, can not delegate to municipal councils the power to suspend the general laws of the State. San Antonio v. Schneider, 37 S. W. Rep., 967; Coombes v. State, 44 S. W. Rep., 854; Burton v. DuPree, 46 S. W. Rep., 272; Ex parte Patterson, 58 S. W. Rep., 1011.

Now, it is well settled law in this State that a municipal corporation can not license that act, and make it innocent and lawful, which the Penal Code has prohibited and made criminal. These decisions are justified upon the broad proposition that the Legislature can not delegate to cities the power to suspend the general law. With confidence, then, we submit that these decisions are applicable to the case at bar, and believe that with greater reason and force the courts will say that a municipal corporation can not make that act penal which the Legislature has declared to be lawful and from which it derives a revenue. We respectfully submit, therefore, that the ordinance is void and that relator should be discharged.

*W. R. Blain,* City Attorney; *W. L. Douglass, Smith, Crawford & Sonfield,* and *Rob't A. John,* Assistant Attorney-General, for respondent.— The Legislature exercises plenary powers in the enactment of laws, except as such authority is expressly or by clear implication restricted by the Federal or State Constitutions, and every act of the Legislature is valid unless it is shown to be in violation of some provision of the Federal or State Constitutions. Cooley Const. Lim., 6 ed., pp. 104-107; Ex parte Willbarger, 55 S. W. Rep., 969.

The Legislature, unless inhibited by the Constitution, has the power to delegate to municipal corporations the power of local government, especially of local taxation and police regulation. The general rule that the Legislature can not delegate its power to make laws does not apply to the delegation of such power to municipal corporations. Cooley Const. Lim., 6 ed., pp. 137, 138, 223-227; Dill. Mun. Corp., 4 ed., sec. 308; State v. Carpenter, 22 Atl. Rep., 497.

The Legislature, unless inhibited by the Constitution, has the power to delegate to municipal corporations authority to enact ordinances which supersede the general laws on such subjects within the limits of the corporation. Cooley Const. Lim., p. 239; Davis v. State, 2 Texas Crim. App., 425; Craddock v. State, 18 Texas Crim. App., 567; Dill Mun. Corp., 4 ed., sec. 87; Village of St. Johnsbury v. Thompson, 9 Atl. Rep., 571.

It is the purpose of the Constitution that the grant of a power in the charter of a city having more than ten thousand inhabitants shall be complete within itself without reference to any other law. City of Dallas v. Electric Co., 83 Texas, 243; Investment Assn. v. Pierre's Heirs, 31 S. W. Rep., 426.

Section 28 of article 1 in the Bill of Rights, that "No power of suspending laws in this State shall be exercised except by the Legislature," does not inhibit the Legislature from delegating its power to make laws to municipal corporations, nor does it inhibit the granting of power by the Legislature to a municipality to enact ordinances which supersede the general laws of the State on the subjects, within the corporation.

We now come to the second inquiry, viz: Conceding that the Legislature had the power, did it grant to the city of Beaumont the authority to enact the ordinance in question?

If the authority is granted, it is found in section 33 of the charter, and under the "general welfare" clause, section 33 of said charter.

Counsel contend that on account of the phrase "under the State law," in the preface of section 33, no ordinance can be passed in exercise of the powers therein granted, repugnant to the general laws. But after the use of this expression by the Legislature it proceeds to specifically authorize the city to punish pool-sellers. Pool-sellers can not be punished "under the State law," and to give the meaning to that term contended for by counsel, would be to have the Legislature saying yes and no in the same section—one expression canceling the other.

That meaning will not be given to this general expression which will render ineffective the evident intent of the specific grant of authority to punish pool-sellers. Suth. Stat. Const., sec. 238; Felt v. Felt, 19 Wis., 193; In re Rouse, Hazard & Co., 91 Fed. Rep., 96; State v. Goetz, 22 Wis., 363, 365; Hay v. Gilroy, 129 N. Y., 138; Stockit v. Bird's Admr., 18 Md., 484.

It is suggested that a conflict between this ordinance 33 and subdivision 18 of article 5049 of the Revised Statutes may be avoided by the construction that that article imposed an occupation tax on selling pools on horse-races, and that the Legislature meant to grant to the city the right to punish all other pool-sellers. But said subdivision 18 of the occupation tax is not confiened to pool-selling on horse-races. It imposes a tax on those who shall sell pools on horse-races or other contests, thus embracing pool-selling on all contests. The charter marshals pool-sellers with their inseparable associates, as follows: "To suppress gambling houses and to punish keepers of gambling houses, and pool-sellers."

There is no kind of pool-sellers, as a matter of fact, so associated in the public mind in Texas with "gambling houses" except the pool rooms where pools are sold on horse-races, and the kind sought to be punished by this ordinance.

If finally the court should strike down the power to punish pool-sellers, it can do so without destroying the whole of section 1 of the ordinance, and it will be left valid and operative as to all other acts denounced

by it, because it is competent for the city under the "general welfare" clause, to make the other acts enumerated in said section 1 of the ordinance penal.

"When a municipal ordinance is good in part and void in part, it is only necessary in order to maintain the ordinance that the valid and invalid parts be so independent that the invalid may be eliminated and what remains contain all the essentials of a complete ordinance." Detroit v. Railway, 95 Mich., 456, and other decisions in note 41 Am. St. Rep., 383.

As to the power to punish the acts other than pool-selling contained in section 1 of this orinance, we cite: Odell v. City of Atlanta, 25 S. E. Rep., 173.

Both branches of this principle being elemental, we deem it unnecessary to cite further authorities.

HENDERSON, JUDGE.—This is an original proceeding by habeas corpus, the writ having been granted by this court. Relator was arrested by the city marshal of Beaumont, under section 1 of an ordinance of that city prohibiting what is called a "turf exchange," which is defined in said ordinance as the selling of pools on horse-racing. The same prohibits the sale of pools on horse-racing within the limits of the city of Beaumont, and makes the person violating such ordinance guilty of an offense subject to a fine of not less than $100 nor more than $200, and each day is made a separate offense. The complaint charged relator with violating this ordinance, and he was arrested on a warrant therefor, and sued out the writ of habeas corpus, as before stated.

Relator claims that horse-racing is not an offense within this State nor is betting thereon, and consequently neither is pool-selling on horse-races; that is, as we understand it, a place where bets are made can not be made an offense by municipal ordinance in the absence of an express or clearly implied grant of power in the charter authorizing the mayor and council to create the same an offense; and he contends there is no such authority for the ordinance. He further contends, if there was such grant of power by the Legislature, it would be violative of section 28 of article 1 of the Bill of Rights, which provides that no power of suspending laws in this State shall be exercised, except by the Legislature. The city contends that the charter grants the power to the city council to pass such an ordinance, and that this is not inhibited by said section of the Bill of Rights. We quote the portions of the charter invoked on behalf of the city, as follows: Section 33 of the charter provides: "The city of Beaumont shall have the right by ordinance duly passed by the city council to exercise such powers as may be necessary under the State law, for the following purposes:" Among other things, "To suppress gambling houses and to punish keepers of gambling houses and pool-sellers and all persons who play at cards or games of any kind, and punish persons who sell lottery tickets, and who advertise lottery drawings or schemes, or the results of the drawings of lotteries." And again,

toward the close of said section: "And generally, to make and establish all rules, regulations, by-laws, and ordinances which may contribute and promote the better administration of the officers of said city, as well as for the maintenance of the peace and tranquillity of said city, and for the protection of the persons and property of its inhabitants." Section 85 reads: "Nothing herein contained shall ever be construed to in any manner suspend, modify, or abridge any penal laws of this State, but the penal laws of this State shall ever be in full force and effect and in no manner repealed or suspended by any provision of this act; but the council may enact any ordinance within the limitations herein provided not in conflict with the penal laws of this State."

We understand it to be conceded that horse-racing is legal, and betting thereon is lawful in this State. Dunham v. Strother, 1 Texas, 91; Walker v. Armstrong, 54 Texas, 615. Moreover, pools, or the sale of bets on horse-racing, is legalized by the occupation tax act of 1897 (Acts Twenty-fifth Legislature, Special Session, page 51, subdivision 18), which provides: "From any person or persons who shall sell pools on horse-races or other contests, five dollars for each and every day they may so sell said pools." In this connection, section 71 of the charter of the city of Beaumont authorizes the city council to levy and collect an occupation tax on all occupations taxed by the State, the tax to be one-half the occupation tax levied by the State.

Now, the question presented is, the occupation of pool-selling being one authorized by the general laws of the State, and from which it derives a revenue, does the charter granted by the Legislature to the city of Beaumont authorize the municipal council of said city to prohibit the pursuit of said occupation within the city limits? We understand the authorities to hold that the municipality can only exercise such powers as are granted it by the sovereign power; that is, the State. In construing these powers, the courts will adopt a strict rather than a liberal construction, and the doctrine is that only such powers and rights can be exercised under charters as are clearly comprehended within the words of the grant or derived therefrom by necessary implication. And of course such a rule will not be relaxed where the purpose is to repeal a State law. Flood v. State, 19 Texas Crim. App., 584; Ex parte Garza, 28 Texas Crim. App., 382; Ex parte Robertson, 30 Texas Crim. App., 493. Now, to hold that the provisions of the charter heretofore referred to and copied would authorize the city council of Beaumont to repeal the State law within its limits, and to make a vocation, elsewhere lawful, unlawful therein, would require us to reject at the very outset a clause in the beginning of section 33 of the charter, to the effect that the city could pass the following ordinances, *under the State law;* that is, as we understand it, in consonance or in accordance with the State laws. It is evident that if the city is authorized to suppress pool-selling or horse-races by the subsequent language used, it must do so not in consonance with but in contravention of the State law on the subject: Now, it will be noted that the inhibition of pool-selling is not selling pools on horse-

racing, but the prohibition is in general terms. A pool has been defined to be the combination of stakes, the money derived from which goes to the winner. Commonwealth v. Ferry, 146 Mass., 203. Pool-seller is one who sells pools on any event, as horse-races, boat-races, elections, etc. A pool ticket is a ticket entitling the holder to a share in the proceeds of a pool. And a pool room is one in which pools on races, etc., are sold. Cent. Dict. Now, we understand, if there is an apparent conflict in the authority granted and the State law on the subject, it is our duty to reconcile that conflict if it can be .done and to apply the law to those things which the municipality can prohibit without the repeal of the State law on the subject. As is evident there are many things on which pools can be sold besides horse-races, the authority granted would only relate to such pools as are not authorized under the laws of this State. This would be giving due weight to the authority of the council to inhibit certain things in accordance with the law of the State; and especially is this construction manifest by the connection in which the pool-selling is prohibited, because we find it, in connection with a number of things which are illegal under the laws of the State, as gambling, etc. We do not deem it necessary to go further and endeavor to enlarge the powers of the municipality under the "general welfare" clause of said section, which has been invoked, because if it is a correct principle that the power to enact the law must be clearly expressed or necessarily implied in the charter, we do not believe it would be a safe or sound doctrine to invoke the authority claimed, under a general power to do anything which may appear to the council to be for the peace and good order of the municipality. A special authority granted in the preceding part of the section could not be thus enlarged. Nor in the view we have taken, do we deem it necessary to discuss the power of the Legislature to authorize the mayor and city council of Beaumont to suspend a State law under section 28 of the Bill of Rights. The charter itself inhibits the suspension or nullification of any penal statute of the State. Section 85 of the charter. And whether the grant of authority by the Legislature to the municipality to make something an offense within the city limits which can be legally pursued outside the city limits, is violative of said section of the Constitution, is not necessary for us to here determine: Because in our opinion there is no grant of power or authority in the charter to prohibit pool-selling on horse-races, the relator is ordered discharged from custody.

*Relator ordered discharged.*