## Minnie Strauss v. The State.

### No. 3381. Decided January 20, 1915.

**1.—City Charter and Ordinance—Police Regulations—Illicit Intercourse.**

The special Act of the Legislature, March 10, 1909, incorporating the City of Fort Worth, by its general provisions and especially by the provision giving said city general police powers, empowered said city to pass an ordinance making it unlawful for any white person and any negro to have sexual intercourse with each other within said city limits, said power extending over all acts which could be made a minor offense, and it was not necessary in said special Act, which is the city's charter, to specially name any and all of the specific acts which came under said police power. Davidson, Judge, dissenting.

**2.—Same—Adultery—Fornication—Statutes Construed.**

The power given to the City of Fort Worth, under its general police power, authorized the said city to enact an ordinance making it unlawful for any white person and any negro to have sexual intercourse with each other within the limits of said city and is not in conflict with the State laws of adultery and fornication, but is in harmony therewith, as said ordinance makes each act of sexual intercourse a separate offense, whereas the adultery and fornication statute requires more than one such act to constitute these offenses. Davidson, Judge, dissenting.

**3.—Same—Color Line—Statute Construed.**

Our laws have always recognized the difference between negro and white persons, and the validity of such laws can not be questioned because of that fact.

**4.—Same—State Legislation—Municipal Legislation—Police Power.**

The fact that the State has never yet made it an offense for a negro and white person to have one act of sexual intercourse does not mean that the State has no such power. However, there can be no question but that the State can authorize its municipal corporations to make acts an offense therein under the police power even though it does not make the same act a State offense. Following Ayres v. City of Dallas, 32 Texas Crim. Rep., 603, and other cases. Davidson, Judge, dissenting.

**5.—Same—Evidence—Rebuttal—Res Gestae.**

Where, upon trial under a city ordinance prohibiting a white person and a negro to have sexual intercourse with each other, the prosecution relied for a conviction on the fact that when the witness entered the room where defendant and a white man were alleged to have had sexual intercourse, they were locked in and both of them undressed, etc., the defendant should have been permitted to show that said white man said at the time that he had not had intercourse with the defendant.

**6.—Same—Evidence—Rebuttal—Res Gestae.**

Where, upon trial of illicit intercourse between a black female and a white male under a city ordinance making such act an offense, the prosecution relied upon the fact that the parties were found in a certain room locked in and partly undressed, the defendant should have been permitted to have asked the white man on cross-examination what he intended to do if the officers had not entered the room when they did, to which he would have answered that he was undressing for the purpose of having sexual intercourse with the negress, but that, in fact, he had not had such intercourse. Harper, Judge, dissenting.

Appeal from the County Court of Tarrant. Tried below before the Hon. Jesse M. Brown, from an appeal of the Corporation Court.

Appeal from a conviction of illicit intercourse between black and white; penalty, a fine of $101.

The opinion states the case.

No brief on file for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—By a special Act of the Legislature approved and in effect March 10, 1909, Special Laws, page 227, Fort Worth was incorporated as a city of more than 10,000 inhabitants with the commission form of government. It had been before then an incorporated city under such special charters. In said Act, which is

its charter, it and its governing commissioners are given special power and authority to do many things unnecessary to mention, but among others are these provisions:

"The board of commissioners of said city shall be vested with the power and charged with the duty of making all laws or ordinances not inconsistent with the Constitution of this State, touching every object, matter and subject within the local government instituted by this Act."

"The board of commissioners shall have the power to pass, amend or repeal all ordinances, rules and police regulations not contrary to the laws and Constitution of this State, for the good government, peace and order of the city and the trade and commerce thereof that may be necessary or proper to carry into effect the powers vested by this charter in the corporation, the city government or any department or officer thereof; to enforce the observance of all such rules, ordinances and police regulations and to punish violations thereof by fine, penalties and costs; but no fine or penalty shall exceed two hundred dollars ($200)."

Then Chapter 9 of the charter headed: "Additional powers of the City of Fort Worth," says: "Said City of Fort Worth shall have the power: . . .

"Sec. 4. To enact and enforce ordinances necessary to protect health, life and property, and to prevent and summarily abate and remove nuisances of all kinds and descriptions, and to preserve and enforce the good government, order and security of said city and of its inhabitants, and *have and enjoy general police powers* of a city; and the enumeration of other powers elsewhere herein and the specifications of same shall not be regarded as limitations upon the general powers herein conferred upon the city by this section."

Under this power and authority said city by its commissioners, duly enacted, and had in force, when this offense was alleged to have been committed, this ordinance:

"An ordinance prohibiting sexual intercourse between white persons and negroes, and providing a penalty.

"Be it ordained by the city commissioners of the City of Fort Worth:

"Sec. 1. It shall hereafter be unlawful for any white person and any negro to have sexual intercourse with each other, within the corporate limits of the City of Fort Worth. Each act of intercourse shall constitute a separate offense.

"Sec. 2. Any person violating the provisions of this ordinance shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be fined in any sum not exceeding two hundred dollars."

By proper complaint appellant was charged with the violation of. this ordinance in that she, a negro woman, on May 11, 1914, in said city unlawfully had sexual intercourse with W. A. Randall, a white man. She was first tried and convicted in said city court, and on appeal to the County Court was again convicted, and now appeals to this court.

She attacks said ordinance on these grounds, because: (1) It contravenes and is in direct conflict with the State law of adultery and fornication; (2) it is broader than legislative authority; (3) neither

express or implied authority is given in the charter, to enact it; (4) it discriminates between the races; (5) it makes the violation thereof depend solely on color, and (6) it contravenes the Constitutions of both Texas and the United States.

We will not discuss each of these grounds separately. But what we have to say embraces all of them. In our opinion the ordinance is valid, and no ground of her attack can be sustained.

The provisions of said charter quoted above, especially the last, gives said city, for its local government, as to all acts which can be made minor offenses, all the police power of the State, in clear and unmistakable language. We think it could not be made clearer. We have no constitutional provision whatever, which, either directly or by implication, prohibits or prevents this.

It was not necessary for the charter to specially name any or all of the specific acts; the city could make an offense embraced in the police power under said charter provisions. The provisions themselves show clearly the Legislature intended to confer, and did confer on said city, *all* police power of the State, as to all acts which could be made a minor offense which could be given to one of its municipal corporations for its local self-government. This could not be construed to mean the power to make acts felonies.

Judge Dillon says: "Under authority 'to ordain and publish such acts, laws, and regulations, not inconsistent with the Constitution and laws of the State, as shall be needful to the *good order* of the city,' it can, says Howard, J., 'subject to these restrictions and certain statute regulations, establish all suitable ordinances for administering the government of the city, the preservation of the health of the inhabitants, and the convenient transaction of business within its limits, and for the performance of the general duties required by law of municipal corporations.'" 2 Dil. Mun. Corp. (5th ed.), sec. 718.

"Power 'to ordain and publish such acts, laws and regulations, not inconsistent with the Constitution and laws of the State as shall be needful to the good order of the city,' authorizes the city to establish all suitable ordinances for administering the government of the city, the maintenance of peace and order, the preservation of the health of the inhabitants, and the convenient transaction of business within its limits, and for the performance of the general duties required by law of municipal corporations. Reasonable ordinances for these purposes are necessary, and they are generally sustained by the courts, . . . though passed by virtue of general charter power, or authority conferred by the general welfare clause." McQuillin Mun. Ord., sec. 434. In section 433 he says:

"Generally, cities may make and enforce within their limits all such local police, sanitary and other regulations designed to promote the health, safety, comfort, convenience and welfare of the local community which are not in conflict with Constitution or the general laws. Crowded urban populations require numerous police regulations which would be unreasonable in rural districts or sparsely populated territory. This

difference was quickly recognized, and from the first establishment of local corporations, invested with civil government, the local community has been empowered to enact and enforce all sorts of such regulations which restrict more or less the liberty of the individual, his personal movements and the use of his property. These are absolutely essential to life in crowded centers. From the beginning their necessity has been sanctioned by the. public authorities and they have been sustained generally by the courts. The police power primarily inheres in the State, but if the State Constitution does not forbid, the Legislature may delegate a part of such power to the municipal corporations of the State, either in express terms or by implication."

It is also said: "The proposition can not be denied that organized government has the inherent right to protect health, life and limb, individual liberty of action, private property and legitimate use thereof, and provide generally for the safety and welfare of its people. Not only does the right exist, but this obligation is imposed upon those clothed with the sovereign power. This duty is sacred and can not be evaded, shifted or bartered away without violating a public trust." McQuillin Mun. Ord., sec. 430.

It would be a useless task to undertake to cite all the authorities establishing what is embraced in the police power. Many decisions of this court give definitions, and instances, of it. None of them would exclude the idea that such an offense as prescribed by said ordinance was not within such power, and none of them intimate it would not be. As illustrative of what all the authorities establish, as police powers as applicable to municipal corporations, we will quote 1 Abbott on Mun. Corp., p. 202, et seq.:

"Government should have for its end the welfare, convenience and advantage of the people, and the advancement of all their material, intellectual and moral interests. One of its important objects, if not the most important, is the protection and preservation of life and limb and the property and good morals of the public.

"That particular and inherent power of the State which has for its purpose the accomplishment of these results is termed the police power. It includes and comprehends within its exercise all these general laws and internal regulations which are necessary to secure the peace, good order, health and comfort of society. It is that power of the State more than all others which affects most intimately the private and personal interests and relations of each individual. It is to a certain extent an indefinable power and the limits of its exercise are never clearly established; no general principle of law can be stated which will even with reasonable accuracy define its application or its exercise. Certain purposes or certain results are to be accomplished by the State; a certain exigency arises affecting the peace, the health, or the comfort of society; and to the Legislature directly or as it may lawfully delegate the power is given the large discretion of passing such measures as are necessary to effect the desired result, restricted only by constitutional limitations. What may be necessary and proper to accomplish this result at one time

may be unnecessary and improper at another. The exercise of the power belongs properly to the law-making or legislative branch of the sovereign, and it is not within the power of any court to prescribe or say what rules and regulations are needful or necessary to the peace, health, safety and morals of the State. The power belongs to the Legislature to be exercised within constitutional limitations.

"It is our theory of government that, controlled only by constitutional provisions, its three great branches, the executive, judicial and legislative, are co-ordinate and co-equal. It is within the power as well as the discretion of the law-making branch to determine what rules and regulations are best calculated to accomplish the great results comprehended and included within the exercise of the police power. As was said by the court in an Ohio case: 'The making of laws is committed to the general assembly; it is the judge of the wisdom and policy of all its enactments, and no court has the right to overrule its judgment, even as to the extent of its own powers, unless it has clearly and beyond doubt exceeded the legislative functions with which it is invested by the Constitution. This is so generally recognized as true as to be regarded as axiomatic upon all questions as to the power of a Legislature to enact a given law.'

"The State has the power to select its agent for exercising the police power or the manner in which it itself shall do this. It is clearly constitutional for the sovereign to delegate to a subordinate public agency, a public (municipal) corporation, the right to exercise this power, and it has been suggested in some cases that the power exists in a municipal corporation proper, independent of any express delegation of the same by the State. It follows, as this is a governmental power, no public (municipal) corporation, not even the State itself, can waive or bargain away the right to exercise it."

Further, page 244, he says: "The good morals of the community should be an especial care of the public authorities, and all regulations or laws passed by the proper authorities, looking to this end come within a valid exercise of the police power."

All civilized nations have always legislated against immoral sexual intercourse as "offenses against public morals, decency and chastity" as designated by our Code, title 10.

The offense made by said ordinance is neither in conflict with, nor antagonistic to our adultery or fornication statutes. On the contrary, it is in harmony therewith and with other of our statutes.

" 'Adultery' is the living together and carnal intercourse with each other, or habitual carnal intercourse with each other without living together, of a man and woman when either is lawfully married to some other person." P. C., art. 490.

" 'Fornication' is the living together and carnal intercourse with each other, or habitual carnal intercourse with each other without living together, of a man and woman, both being unmarried." P. C., art. 494.

Said ordinance is: It shall be unlawful for any white person and

any negro to have sexual intercourse with each other. Each act of intercourse shall constitute a separate offense.

No single act alone can be either adultery or fornication. To make adultery the man and woman must live together and have one or more acts; or if not living together, then the acts must be more than one— of such frequency and at such short intervals—as to amount to "habitual." Fornication is precisely as adultery on those points—the only difference between them is, that if either the man or woman is married to another it will be adultery, if neither is married, it will be fornication. And it makes no difference whether one or both,—the man or woman,— are white or a negro. Whereas, by the ordinance one must be white, the other a negro, and one act alone between such negro and white person constitutes the offense, whether one or both are married to another, or neither is married.

Our laws have all the time recognized, and legislated upon the difference between negroes and whites. Their validity can not be questioned because of that fact. For instance, under said title 10 of our Penal Code prescribing some "offenses against public morals, decency and chastity," article 483 not only makes it a penitentiary offense for a white person and negro to knowingly marry in this State, but also when they have married out of the State to continue to live together as husband and wife, after coming to this, and makes both parties punishable. Prior to the revision of our Code in 1879 the statute restricted the punishment to the white person only—did not authorize the negro to be punished. The validity and constitutionality of said law as it existed prior to 1879, was sustained by this court in a most exhaustive and able opinion by Presiding Judge Ector in Frasher v. State, 3 Texas Crim. App., 263, and reaffirmed by an opinion of Presiding Judge White in Francois v. State, 9 Texas Crim. App., 144. There can be no question of the correctness of those decisions.

Again: Our Code, title 18, chapter 15, requires all our common carriers to provide separate coaches or compartments for whites and negroes, and makes it an offense if they fail or refuse to do so. Our law also requires the railroads to provide separate waiting rooms at their stations for said races. There can be no question of the validity of such laws. It is needless to cite other instances.

It is true the State has never yet made it an offense for a negro and white person to have one act of sexual intercourse. It unquestionably has the right and power to do so. Perhaps the necessity therefor has not appeared to the Legislature to make such offense for the whole State, like it has to the City of Fort Worth for the protection of the morals and good order of the inhabitants of that city.

However, there can be no question but that the State can authorize its municipal corporations to make acts an offense therein under the police power, even though it does not make the same act a State offense. Numerous instances of this might be cited. This principle has been repeatedly held by this court. In Ayres v. City of Dallas, 32 Texas

Crim. Rep., 603, this court, through Judge Simkins, "judges all present and concurring," held:

"The object of the power conferred by the charter and the purpose of the ordinance itself was not to punish an offense against the criminal law of the State, but to provide a police regulation for the enforcement of good order and peace within the limits of the municipal corporation. It is not a valid objection that the ordinance makes that act an offense which is not defined in the Penal Code of the State. In the preservation of the life, health, good order, and public morals, many acts not unlawful in themselves, or not defined nor punished by the Penal Code, may be prohibited by the ordinances, because, in the judgment and discretion of the corporate authorities, they are injurious to the general welfare of the city."

Again, in Ex parte Hughes, 50 Texas Crim. Rep., 614, this court held: "So the question is simply, in the absence of any State law on the subject, can the Legislature authorize a municipality by ordinance to make penal the sale of railroad tickets by others than the agents of such railroads. There is nothing in the Constitution prohibiting the exercise of this power, if it is only a delegation of such legislative power as may be exercised by its power to make laws, yet as a well recognized exception to this, is the delegation of such police power as may be properly exercised by cities. Cooley on Const. Lim., pp. 138, 226; Smith's Mod. Law of Mun. Cor., vol. 2, secs. 1319 to 1324, inclusive, also sec. 498."

This brings us to the questions in the trial of this case. There are but two other questions raised by her bills necessary to pass upon. In one she complains the court should have permitted her upon cross-examination of the State's witness Flippen to have him testify that as soon as he gained admittance to the room where she and the white man, Randall, with whom she is alleged to have had intercourse at the time, were locked in and both of them undressed and the bed ruffled up, that Randall said to him he had not had intercourse with her. We are inclined to believe this was res gestae and admissible. Its exclusion under the circumstances of this case might not present reversible error.

We copy her bill No. 3 in full, after omitting only the number, style of the case, and court: "Be it remembered, that upon the trial of the above numbered and entitled cause, and while the witness W. A. Randall, the party with whom it is alleged that defendant had intercourse, was testifying for and in behalf of the defendant, and after it had been proved and shown by the witness Flippen, the witness Knight, and partly by the witness Randall, that said Randall, when said officers entered, had his shoes off and was putting on his pants, after such had already been testified to, and in order to account for such condition in the way of dress of the witness Randall, and in order to rebut the presumption that they had already had intercourse, and that the said Randall was then dressing, said defendant's attorney propounded the following question to said witness Randall: 'What were you intending to do if the officers had not entered the house when they did?' Which question was

then and there objected to by the county attorney, and which objection was, by the court sustained, to which action of the court the defendant then and there in open court excepted for the reason that if said witness was permitted to answer said question he would say in answer thereto, that if the officers had not entered the house so quickly, that they, defendant and witness, would have had intercourse; that he was undressing for the purpose, but when they heard the officers coming he began to redress; that they were getting ready to have intercourse, but they in fact had not had such an act of intercourse as charged in the complaint. (2)  If permitted to make such answer, which said witness would do, if allowed, it would account for the partially undressed condition of defendant and witness; that the State relied upon such fact; that is, upon the fact of being partially dressed, to show that they had already had intercourse, and that the witness Randall was dressing when the officers came, whereas, if said witness would be permitted to answer said question, as he would have done as above stated, it would rebut said presumption and thereby account for their condition of dress.  The court sustained the State's objection to said question, and he was not allowed to answer the same; that if he had been permitted to answer, he would have testified as above stated, to which action of the court the defendant then and there excepted for the reasons above stated, and here now tenders this, his bill of exception No. 3, and prays the court to examine, approve and allow the same, and order same filed as a part of the record in this cause.

"Examined and approved, this the 29th day of October, 1914.

"Jesse M. Brown,
"Judge County Court, Tarrant County, Texas."

We think it clear, both from the statute and the many decisions of this court, that said evidence was admissible, and the court erred in excluding it.  C. C. P., art. 811; sec. 337, Branch's Crim. Law, where he collates some of the cases.  For this error of the court in excluding this evidence the case must be reversed and remanded.

*Reversed and remanded.*

HARPER, Judge.—I do not agree that bill No. 3 presents error. The witness Randall was permitted to testify that he had not had intercourse with the woman.  Then the question was asked by defendant, "What were you intending to do if the officers had not entered the house when they did?"  I do not think what he would testify he intended to do would be admissible.  He was permitted to testify to all the facts within his knowledge, but I do not agree that what he would say was his intention thereafter to do would be admissible.  And while agreeing that the ordinance is valid, I am of the opinion the case should be affirmed.

DAVIDSON, Judge.—I concur in the reversal on ground stated. But I am of the opinion the ordinance is void.  Cases collated in Branch's Crim. Law, sec. 207 et seq., and will write later.

DAVIDSON, JUDGE (dissenting).—On a former day of the term the judgment herein was reversed on the grounds stated in the opinion by Presiding Judge Prendergast. I concurred in the reversal on the grounds stated. I respectfully enter my dissent, however, to the conclusion reached by the majority opinion that the ordinance is valid. That ordinance reads as follows:

"Be it ordained by the city commissioners of the City of Fort Worth:

"Sec. 1. It shall hereafter be unlawful for any white person and any negro to have sexual intercourse with each other, within the corporate limits of the City of Fort Worth. Each act of intercourse shall constitute a separate offense."

There are several points of attack made by appellant. I had thought we had reached a stage in our jurisprudence where it was unnecessary to cite authorities to show that a city can not pass a criminal ordinance unless authority is granted in the charter itself to do so. The authority to create this ordinance is not to be found in the charter of the City of Fort Worth. It is a fundamental proposition that a city can exercise no authority except that granted in its charter. For collation of authorities see Branch's Crim. Law, sec. 209. A charter of a municipal corporation is its organic law and furnishes the measure of its powers. It can exercise no power which the charter does not grant in express words, or which is not necessarily or fairly implied or incident to the powers expressly granted, or which is not essential to the declared objects and purposes of the corporation. Garza v. State, 28 Texas Crim. App., 381. The above is a condensed statement of the rule by Mr. Branch. It aptly and correctly states the law. If there is no authority in the grant or charter to the city to pass the ordinance, it is void. Ogden v. State, 43 Texas Crim. Rep., 531; Powell v. State, 43 Texas Crim. Rep., 391; Garza v. State, 28 Texas Crim. App., 381; Grace v. State, 9 Texas Crim. App., 381; Campbell v. State, 22 S. W. Rep., 1020; Smith v. State, 51 Texas Crim. Rep., 395; Ex parte Smith, 51 Texas Crim. Rep., 466.

There being no authority granted the City of Fort Worth to pass this ordinance, it would be void from this viewpoint.

Again, the powers granted a city to legislate is strictly construed and in favor of the granting power as against the grantee, and the courts adopt a strict rather than a liberal construction in passing upon the granted power to municipal corporations. Heidleberg v. State, 51 Texas Crim. Rep., 581; Ginnochio v. State, 30 Texas Crim. App., 584; Grace v. State, 9 Texas Crim. App., 381; Flood v. State, 19 Texas Crim. App., 584; Lynn v. State, 33 Texas Crim. Rep., 153; Powell v. State, 43 Texas Crim. Rep., 391.

The charter of the municipal corporation being its organic law, contains the only authority by virtue of which ordinances may or can be created. Where doubt exists as to that power, it must be resolved adversely to the corporation. Mantell v. State, 55 Texas Crim. Rep., 456; Lynn v. State, 33 Texas Crim. Rep., 153. And the same rules of construction apply to the amount of power whether conferred by general laws or special act. Bohmy v. State, 21 Texas Crim. App., 597. Nor

can special authority granted be enlarged by the general welfare clause. Powell v. State, 43 Texas Crim. Rep., 391. It is also the rule that an ordinance broader than the legislative authority granted is invalid. Heidleberg v. State, 51 Texas Crim. Rep., 581; McNeil v. State, 29 Texas Crim. App., 48. It has also been held that the courts can not engraft upon a law something that has been omitted which the courts believe should have been embraced. This would be judicial legislation forbidden by the Constitution, art. 2, sec. 1; Chase v. Swayne, 88 Texas, 218. The courts are powerless to supply an omission in the law, or to create a duty which the Legislature has not imposed. Caven v. Coleman, 100 Texas, 467.

Again, the ordinance is in conflict with the State law, and for that reason it is void. The State law provides punishment for illicit intercourse in various and sundry ways; among other things, it is provided adultery and fornication shall be punished. Of course, we understand that fornication and adultery can only be committed by illicit intercourse between the sexes, and where the State law has provided a definition in the punishment, the city is powerless to pass an ordinance in conflict with it, and the Legislature is powerless to authorize the city to do so. This seems to be fundamental as well as contained in the Constitution. It has been held in an unbroken line of authority, that if the city ordinance conflicts with the State law, the ordinance must yield and is void. Mantell v. State, 55 Texas Crim. Rep., 456; Flood v. State, 19 Texas Crim. App., 584; Sundstrom v. State, 25 Texas Crim. App., 133; Lynn v. State, 33 Texas Crim. Rep., 153; Slaren v. State, 3 Texas Crim. App., 662; Ex parte Gregory, 1 Texas Crim. App., 753. It is the rule, without exception, that an ordinance is invalid which prescribes a greater or less penalty than the State law where the act or omission covered by the ordinance is an offense against the State. McHenry v. State, 103 S. W. Rep., 390; Cross v. State, 44 Texas Crim. Rep., 373. It was held that an ordinance which permitted merchants to sell on Sunday at different hours than those permitted by the State law, is void, because in conflict with the State law. Flood v. State, 19 Texas Crim. App., 584; Bohmy v. State, 21 Texas Crim. App., 597; Angerhoffer v. State, 15 Texas Crim. App., 613; Carr v. State, 41 Texas Crim. Rep., 381; Arroyo v. State, 69 S. W. Rep., 503. And it has been also held that power when expressly granted to regulate acts or omissions, which are offenses against the State, must be legally exercised by the city in harmony with the criminal laws of the State. Bell v. State, 32 Texas Crim. Rep., 308. The Constitution seems to be all sufficiently clear on this question, without even having cited cases. Article 11, section 5, reads as follows: "Cities having more than five thousand inhabitants may by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters subject to such limitations as may be prescribed by the Legislature; and providing that no charter, or any ordinance passed under said charter, shall contain any provision inconsistent with the Constitution of the State or of the general laws enacted by the Legislature of this State," etc. This Con-

stitution, it occurs to me, ought to control legislative acts and judicial determination. Whatever the courts may think about policies or deficiencies in the law, they can not add to or detract from the organic law, and the Legislature is as much bound by these provisions of the Constitution as are the courts. It may be well enough occasionally to go back and look at first principles; and it may be well enough occasionally to get on speaking terms with the organic law. It may remind us that the three co-ordinate branches of this government are created by the Constitution, and are legally supposed to conform to the law of their creation. Heretofore it has been understood that the Constitution is the superior law, and when attempted legislation conflicts with its restrictions and purports to make a law which is thereby prohibited, it is clearly the duty of the courts to declare such legislation void and to give it no effect. Williams v. Taylor, 83 Texas, 667; Galveston, etc., Ry. Co. v. Gross, 47 Texas, 428; Higgins v. Rinker, 47 Texas, 381; Watson v. Aiken, 55 Texas, 536. It has also been held by the former great judges of this court that the provisions of the Constitution can not be abrogated or restricted by legislative enactment; they must remain intact as part of the supreme law of the land, in favor of any person accused of crime in this State, until they shall be abolished or altered by the sovereignty of the State exercised in conformity with the Constitution of the United States. Huntsman v. State, 12 Texas Crim. App., 619. It has been held in some decisions by our great judges of the past, that the provisions of the Constitution are mandatory upon the courts. State v. Durst, 7 Texas, 74. It has also been held that constitutional provisions are mandatory, not directory. State v. Sims, 43 Texas, 521; State v. Durst, supra; Cox v. State, 8 Texas Crim. App., 254; Holley v. State, 14 Texas Crim. App., 505; State v. Connor, 86 Texas, 133; Higgins v. Bordages, 88 Texas, 458; Chase v. Swayne, 88 Texas, 218; Willis v. Owen, 43 Texas, 41; Storrie v. Cortez, 90 Texas, 283; Hutcheson v. Storrie, 92 Texas, 685; Canon v. Hemphill, 7 Texas, 184; Giddings v. San Antonio, 47 Texas, 548; Hunt v. State, 7 Texas Crim. App., 212; Taylor v. State, 14 Texas Crim. App., 340; Hunt v. State, 22 Texas Crim. App., 396; Hawaii v. Mankichi, 190 U. S., 197; Powell v. State, 17 Texas Crim. App., 345; Kline v. State, 36 Texas Crim. Rep., 320; Hatch v. State, 10 Texas Crim. App., 515; Ginnochio v. State, 30 Texas Crim. App., 584; Davis v. State, 15 Texas Crim. App., 475; Whitener v. Belknap, 89 Texas, 273; Lynn v. State, 33 Texas Crim. Rep., 153; Titus v. Lattimer, 5 Texas, 433; Sun Vapor Electric Light Co. v. Keenan, 88 Texas, 197.

The Legislature has no authority to empower the city to suspend any State law or pass any ordinance that may conflict with the State law. The Legislature alone has the power of suspending the operation of general laws, and in exercising the power must make the suspension general, and can not suspend general laws for individual cases, or for particular localities, nor delegate authority to a city to suspend certain laws of the State as to certain individuals in certain localities. McDonald v Denton, 132 S. W. Rep., 823. So it was held under article 361

of the Penal Code, that an ordinance of the City of Dallas regulating, colonizing and segregating the keepers of bawdy houses within a specified district was void. Brown Cracker Co. v. Dallas, 104 Texas, 290, 137 S. W. Rep., 342. Under the Penal Code of Texas bawdy houses are prohibited everywhere, therefore the Supreme Court held in Brown Cracker Co. v. Dallas, supra, that the Legislature could not empower the City of Dallas to regulate, or colonize or segregate bawdy houses in restricted districts. This is in strict conformity to the provisions of article 11, section 5, of the Constitution, heretofore quoted. It has been held under all the authorities that an ordinance of a city authorizing the opening of saloons and the sale of intoxicants on Sunday, except during certain hours, is in contravention of the State law and void. Fay v. State, 44 Texas Crim. Rep., 381; Arroyo v. State, 69 S. W. Rep., 504. The Legislature can not delegate to a municipal corporation authority to suspend a State law of Texas. Const., art. 1, sec. 28; Burton v. Dupree, 19 Civ. App., 277; Arroyo v. State, 69 S. W. Rep., 503; Curtis v. Ry. Co., 26 Civ. App., 305; Ogden v. State, 43 Texas Crim. Rep., 532; Ex parte Coombs, 38 Texas Crim. Rep., 648; Ex parte Powell, 43 Texas Crim. Rep., 391; Fay v. State, 44 Texas Crim. Rep., 381; McDonald v. Denton, 132 S. W. Rep., 823; McDonald v. Denton, 135 S. W. Rep., 1148; see also Harris' Ann. Constitution, pp. 209-212. This ordinance prescribes different punishment for prostitution or illicit intercourse in the City of Fort Worth from that under the State law. It also defines differently from the State law. The City of Fort Worth had no express authority granted it to pass an ordinance with reference to adultery between the races, or fornication, as the case may be, different from what the State law would be on the same subject. Under the State law it would be either fornication or adultery, if the facts were sufficient. This ordinance defines adultery in the City of Fort Worth, or fornication, as the case may be, between the negro and the white race, and limits it to one act, and makes each act a separate offense. Under the adultery statute one act may be sufficient under certain circumstances. It would hardly, therefore, be debatable that this ordinance is in direct conflict with the State law, therefore in violation of all the decisions and of the plain provisions of the Constitution. I do not know whether the city commissioners of Fort Worth passed this ordinance under the theory that it would be a violation for a negro woman to have intercourse with a white man, or a negro man with a white woman as a discrimination against the intercourse between a white man and a white woman. Under the State law they are all put in the same class; it does not stop to inquire whether he or she is black or white, brown or yellow. The criterion is, under the State law, that a man and woman must not live in or commit adultery or fornication. It does not punish one class of women and men and exonerate another class of men and women.

Perhaps I have written more than is necessary, and more than I ought to have written in view of the plain constitutional provisions and the unbroken jurisprudence, but as Judge Roberts once aptly said: "A

frequent recurrence to first principles is absolutely necessary in order to keep precedents within the reason of the law." It is well enough to remind our courts that Judge Roberts stated a great truth, and in drifting times of political excitement and judicial flights it is well enough to occasionally go back to first principles and take our reckoning. He uttered another great truth with which I close: "Whoever undertakes to determine a case solely by his own notions of its abstract justice breaks down the barriers by which the rules of justice are erected into a system and thereby annihilates the law." Duncan v. Magette, 25 Supreme Court Rep. of Texas, at pages 254-255. I have thought in view of these matters it well enough to briefly review these questions and bring up the authorities once more.

For the reasons indicated I agree with the reversal of the case, but have stated these reasons why I can not agree with the majority of the court holding the ordinance valid. It is so clearly invalid that it ought not to be the subject of debate or discussion.

HARPER, JUDGE (dissenting).—I do not think this case should be reversed, but should be affirmed. It is reversed on the ground that the court erred in sustaining the objection of the State to the following question propounded to the witness W. A. Randall: "What were you intending to do if the officers had not entered the house when they did?" The bill is voluminous about what was expected to be proven had the objection to this question not been sustained, but none of the things alleged in the bill would have been a legitimate answer to the question propounded. The answer alleged is that after denying having intercourse with the woman, if the officers had not come he would have answered he would have had intercourse with the woman. This would have been a complete answer to the question, and the other matters alleged would not and could not have been elicited by the question propounded, and what he intended to do would not be admissible. It is said in the bill, that it was desired to elicit from him why he had his shoes off; why he was putting his pants on, etc. If that is the information desired to elicit, proper questions should have been propounded to elicit such information, and doubtless if such questions had been propounded, the court would have admitted the evidence, as the State had proven he had his shoes off and was putting on his pants when the officers entered the room. But the question in fact propounded could not and would not inform the court that it was these matters they wanted an explanation of given, and such explanation could not have been legitimately given in answer to the question to which the court sustained the objection. To say now they would have gone further if the court had not sustained the objection to this question, and propounded other questions that would have elicited testimony explanatory of the condition in which he was found, does not render admissible the answer to an improper question. What he intended to do if he had not been caught, is the statement of no fact, would explain no fact in evi-

dence, and the court did not err in sustaining the objection to the only question propounded, because by it he could not have elicited the information he now says he desired to get in evidence. Questions to elicit such information were not propounded, and the only question we are called to rule upon is, did the court err in sustaining the objection to that question,—not would he have erred had other questions been propounded, which were never propounded. No legitimate answer to the question propounded would have been legally admissible. This is the only question upon which my brethren agree that the case should be reversed, and to this I enter my dissent. For authorities, see sec. 857, White's Ann. Proc.

On the other question discussed I agree to the conclusion reached by Presiding Judge Prendergast, that the ordinance is valid. Of course, in so doing I agree with Judge Davidson that the authority to enact this ordinance must be found in the charter, and think Presiding Judge Prendergast so holds, but I do not agree with Judge Davidson that no such authority is found in the charter of the City of Fort Worth. Presiding Judge Prendergast copies enough of the provisions of the charter to show that ample authority is therein contained. If there was no such authority in the charter, then the authorities cited by Judge Davidson would be in point, and I would agree that the ordinance was invalid.

I do not agree that the ordinance is in conflict with any State law. If it was in conflict with a State law, then I would agree that it was invalid. Judge Davidson says it conflicts with the laws defining adultery and fornication. I do not think so. Adultery and fornication are defined to be habitual carnal intercourse, or intercourse while living together. This ordinance defines as an offense *one act* of intercourse between a white person and a person of the negro race. If under the adultery or fornication statute you should allege that A. B., a white man, or a man, had one act of intercourse with C. A., a negro woman, or a woman, upon proof of that fact a conviction could not be had either under the adultery or fornication statute. In fact, an information charging only those facts and no other would be quashed on motion, therefore the ordinance in nowise conflicts with the State law as to adultery and fornication. It denounces as an offense a single act of intercourse between a white person and a negro person, a matter about which the State had not legislated, except to prohibit the intermarriage of such persons. Article 483 of the Penal Code provides if any white person and negro shall knowingly intermarry with each other in this State, they shall be punished by confinement in the penitentiary; and article 484 provides the term "negro" includes also a person of mixed blood descended from negro ancestry. That such a law is violative of no provision of the Constitution, State or Federal, has been specifically held by this court in the cases of Frasher v. State, 3 Texas Crim. App.. 263, and Francois v. State, 9 Texas Crim. App., 144. The opinion of Judge Davidson that such an act is unconstitutional is supported but by one authority, that is Burns v. State, 48 Ala., 195, and that case was over-

ruled by the Alabama Supreme Court in the case of Green v. State, 58 Ala., 190. What was the object and purpose of prohibiting inter-marriage between the races? It was to prevent there being children born of mixed blood. The City of Fort Worth had taken one step further than the State, it prohibits a single act of intercourse when not married, to carry out the general policy of the State—prevent the birth of chil-dren of mixed blood. An ordinance of the city must not conflict with a State law is not denied, and we agree to that rule of law as announced by Judge Davidson, and the authorities quoted by him, but this ordi-nance is not in conflict with any State law, but is dealing with an evil about which the State has enacted no legislation, under the authority granted the city by its charter, and this court had specifically held, Ayres v. Dallas, 32 Texas Crim. Rep., 603, that a city may enact an ordinance which defines as an offense an act which is not defined in the Penal Code, where authority to do so is conferred upon the city. This is what the City of Fort Worth has done, and nothing more. The legal propositions asserted by Judge Davidson are correct, except wherein it is held that such an act would be unconstitutional, but they have no application to the facts in this case as shown by the record on file, and the charter of the City of Fort Worth, of which we are required by the act to take judicial notice.

I am of the opinion the judgment should be affirmed, and I respect-fully enter this my dissent.