# Ex Parte Tom O. Stout.

## No. 4526.    Decided November 21, 1917.

**1.—City Charter and Ordinance—Labor Picketing—Constitutional Law.**

   Where the city of El Paso, Texas, by a special Act of the Legislature, had complete and exclusive control over the streets, etc., to abate and remove encroachments, etc., thereon, a city ordinance thereunder that it shall be unlawful for any person or persons to walk back and forth, loiter or remain, or cause any person to walk back and forth, loiter or remain upon the streets or sidewalks in the city of El Paso, Texas, in front of any business house for the purpose of persuading any person or persons by signs carried from entering said place or places of business for the purpose of transacting business therein, and assessing a fine therefor, is constitutional, valid, and reasonable. Following Ex parte Sullivan, 77 Texas Crim. Rep., 87, and other cases.

**2.—Same—Municipal Government—Rule Stated.**

   The very object and purpose of municipal government is to pass and enforce ordinances to preserve and enforce good government, order and security of it and its inhabitants, and to protect the lives, health, and property of its inhabitants, and violates neither the Constitution of Texas nor that of the United States. Following Strauss v. State, 76 Texas Crim. Rep., 132, and other cases. Distinguishing Ex parte Neill, 32 Texas Crim. Rep., 275, and other cases.

**3.—Same—Statutes Construed—Trade Unions.**

   An ordinance of the city of El Paso under a special Act of the Legislature incorporating said city which makes it unlawful for any person or persons to

picket the sidewalks and streets of El Paso by signs carried in front of a business house for the purpose of persuading any person or persons from entering said place of business, is not in conflict with articles 5244 and 5245 of the Revised Civil Statutes of Texas, or article 1474 and article 1478 of the Penal Code, and does not illegally interfere with trade unions, etc., nor is said ordinance unreasonable, vague, or uncertain.

### 4.—Same—Restaurant—Sidewalk—Police Power.

The fact that the restaurant of the injured party abutted upon a portion of the sidewalk where the relator was undertaking to injure and disturb him and his business by picketing the same would itself give the injured party some right, and it was the duty of the city of El Paso by the above ordinance to protect him in the conduct of his business, under the special charter.

From El Paso County.

Original proceeding under writ of habeas corpus asking release from arrest under an ordinance of the City of El Paso preventing the picketing of streets and sidewalks of said city.

The opinion states the case.

*Hudspeth, Dale & Harper,* for appellant.—On question of unconstitutionality of the ordinance: Ex parte Foster, 44 Texas Crim. Rep., 423, and cases cited in opinion.

On question of conflict with State statutes: Ex parte Ogden, 43 Texas Crim. Rep., 531, 66 S. W. Rep., 1100; Flood v. State, 19 Texas Crim. App., 584; Bohmy v. State, 21 id., 597; Angerhoffer v. State, 15 id., 613; In re Eva Sweitzer, 162 Pac. Rep., 1134.

On question of ultra vires: Ex parte Powell, 43 Texas Crim. Rep., 391; Ex parte Grace, 9 Texas Crim. App., 381; Ex parte Garza, 28 id., 381; Ex parte Epperson, 61 Texas Crim. Rep., 237.

On question of unreasonable ordinance: Ex parte Battis, 40 Texas Crim. Rep., 112.

On question that said ordinance is vague and uncertain: Augustine v. State, 41 Texas Crim. Rep., 59; Ex parte Marshall, 72 Texas Crim. Rep., 83, 161 S. W. Rep., 112.

*E. B. Hendricks,* Assistant Attorney General, for the State.—Cited cases in opinion.

PRENDERGAST, Judge.—Before May 14, 1917, the city council of El Paso, its law-making power, duly enacted, and on that date was in force, the following ordinance:

An ordinance to regulate walking back and forth, loitering or remaining on the streets and sidewalks in the City of El Paso, Texas.

*Be it ordained by the City Council of the City of El Paso, Texas:*

SECTION 1. It shall be unlawful for any person or persons to walk back and forth, loiter or remain, or cause any person to walk back and forth, loiter or remain upon the streets or sidewalks in the City of El Paso, Texas, in front of any business house for the purpose of persuading any person or persons by word of mouth from entering said place or places of business for the purpose of transacting business therein.

SEC. 2. It shall be unlawful for any person or persons. to walk back and forth, loiter or remain, or cause any person to walk back and forth, loiter or remain upon the streets or sidewalks in the City of El Paso, Texas, in front of any business house for the purpose of persuading any person or persons by signs carried from entering said place or places of business for the purpose of transacting business therein.

SEC. 3. Provided, that neither of the foregoing sections shall be held to render it unlawful for any member or members of any trade union, organization or association, or any other person to induce, or attempt to induce by peaceable and lawful means, any person to accept any particular employment, or quit or relinquish any particular employment in which such person may then be engaged, or to enter any pursuit, or refuse to enter any pursuit, or quit or relinquish any pursuit in which such person may then be engaged; provided, that such member or members shall not have the right to invade or trespass upon the premises of another without the consent of the owner thereof.

SEC. 4. Any person or persons violating the foregoing ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not in excess of two hundred ($200) dollars.

SEC. 5. Should it hereafter be discovered or adjudged by any court that any section or portion of this ordinance is unconstitutional, void or invalid for any reason, it shall not affect the validity or constitutionality of the remaining portions of this ordinance, unless such portion so declared unconstitutional, void or invalid is so interwoven with, or dependent upon other portions of said ordinance that the same can not be enforced as intended by this ordinance.

SEC. 6. Whereas, the fact that there is at present no sufficient ordinance regulating the standing, loitering or remaining upon the streets and sidewalks in the City of El Paso, Texas, creates a public emergency justifying the suspension of the charter rule requiring that all ordinances be read at two regular meetings of the city council, and the same is hereby suspended by the consent of the mayor and the unanimous vote of all aldermen present, and this ordinance shall take effect and be in force from and after its passage, approval and publication. Said Stout was prosecuted for a violation of Section 2 of said ordinance before the Corporation Court, was convicted, and fined $25, which he refused to pay. He was thereupon taken into custody by the chief of police of El Paso and held. He sued out a writ of habeas corpus before this court. The facts were agreed upon. At the time he was arrested he was doing "picketing" on the sidewalk in front of the Java Cafe, at 314 San Antonio Street, in the City of El Paso, which consisted of his walking up and down the outer edge of the sidewalk, and back and forth in front of said cafe, carrying what is termed a "sandwich" badge on his breast, and a like badge on his back, which contained the following words: "This restaurant unfair to organized labor and sympathizers. Cooks, Waiters & Waitresses' Union, Local 848. Labor is worthy of its hire." He did not engage in conversation, nor was anything said to him, by anyone, while so "picketing." He was a

member of the Cooks, Waiters and Waitresses' Union, Local 848, and was doing the "picketing" by authority of .that union, and because the Java Cafe was not employing union cooks, waiters and waitresses.

He attacks the validity of said ordinance: 1. Because he claims the City of El Paso had no authority to pass such an ordinance.

The charter of El Paso was a special Act of the Legislature of 1907, page 24. Section 2 thereof gives said city this power and authority: "The City of El Paso shall have power to enact and to enforce all ordinances necessary to *protect health, life and property,* and to prevent and summarily abate and remove nuisances, and *to preserve and enforce the good government, order and security of the city and its inhabitants; to protect the lives, health and property of the inhabitants of said city, and to enact any and all ordinances upon any subject;* provided, that no ordinance shall be enacted inconsistent with the laws of the State of Texas, or inconsistent with the provisions of this Act; and provided further that *the specification of particular powers shall never be construed as a limitation upon the general powers herein granted; it being intended by this Act to grant and bestow upon the inhabitants of the City of El Paso full power of self-government, and it shall have and exercise all powers of municipal government not prohibited to it by this chapter or by some general law of the State of Texas or by the provisions of the Constitution of the State of Texas."*

Section 56 also gives the city this power and authority: "The city council shall have complete and exclusive control and power over the streets, alleys, and highways of the city, and to abate and remove encroachments thereon; to open, alter, close, widen, extend, establish, regulate, sell, lease, grade, clean or otherwise improve said streets; provided no street shall ever be closed, sold or leased except for an adequate consideration, and not then except by the vote of at least three-fourths of the aldermen and the approval of the mayor; to put drains or sewers therein and to prevent the encumbering thereof in any manner and to protect the same from encroachment or injury; provided, that the city shall not be liable in damages at the suit of any person for injury, either to person or property, arising from an unsafe condition or want of repair of any street, square, alley, plaza, park, sidewalk, or public place in the city unless at least ten days before the injury occurred a notice in writing shall have been filed with the city clerk for the city council specifically pointing out the nature and exact locality of the defect, obstruction, or other thing that afterward occasions the injury."

The very object and purpose of municipal governments is to pass and enforce ordinances to preserve and enforce the good government, order and security of it and its inhabitants, and to protect the lives, health and property of its inhabitants. If they had no power to do these things, their creation and maintenance might be useless.

This power and authority given said city is ample and complete to authorize it to pass and enforce said ordinance for any of the objects or purposes specified unless there is some constitutional or statutory

provision which would prevent or prohibit it.    Ex parte Sullivan, 77 Texas Crim. Rep., 87, and authorities cited; Strauss v. State, 76 Texas Crim. Rep., 132, and authorities cited.

2.   The relator contends that said ordinance violates section 8, article 1, of the Constitution of Texas, which provides: "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press." And he states it also violates subdivision 1 of the Fourteenth Amendment to the Constitution of the United States, which provides that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Under this attack, he presents only the claimed invalidity under said provision of our State Constitution, and cites Ex parte Neill, 32 Texas Crim. Rep., 275; Ex parte Foster, 44 Texas Crim. Rep., 423; Mitchell v. Grand Lodge, etc., 121 S. W. Rep., 178; City of St. Louis v. Gloner, 109 S. W. Rep. (Mo.), 30, as sustaining him.

The Neill case held an ordinance of Seguin void which enacted that the "Sunday Sun," a paper published at Chicago, was a nuisance, and prohibited its circulation in Seguin, and made it an offense for any person to sell it therein.  This court therein held: "We are not informed of any authority which sustains the doctrine, that a municipal corporation is invested with the power to declare the sale of newspapers a nuisance.

"The power to suppress one concedes the power to suppress all, whether such publications are political, secular, religious, decent or indecent, obscene or otherwise.  The doctrine of the Constitution must prevail in this State, which clothes the citizen with liberty to speak, write or publish his opinion on any and all subjects, *subject alone to responsibility for the abuse of such privilege.*"

The Foster case held a district judge could not by an order in a criminal case prohibit a newspaper from publishing the evidence given in the trial while being tried, and then punish for contempt one who did so publish the evidence, mainly because the Constitution required such trials to be public.

The Court of Civil Appeals in the Mitchell case held an injunction would not lie to prohibit the publication of a▪ libel, but said our Supreme Court had never so held, and that the courts of other States differed on the question.  That court must have overlooked the cases of Ex parte Dupree, 101 Texas, 150; Ex parte Allison, 99 Texas, 463; these cases were passing primarily on statutory provisions, but the principles announced would embrace rights without regard to statutory provisions.  But whether these cases were overlooked or not this case is not applicable, if for no other reason, because the offense had already been committed and he was convicted for that, and this was no pro-

ceeding to enjoin or otherwise prevent him from committing such offense in future.

The Gloner case from Missouri shows an altogether different case from this. · That the ordinance held void made it a misdemeanor merely "for any person to lounge, stand, loaf around, about or at street corners in the day or night-time. That court said: "There is no pretense that defendant was at the time of his arrest in any way obstructing the street, or *interfering with the rights of any person.*"

Section 2 of this ordinance does not make such an act only an offense, but makes it "unlawful for any person to walk back and forth upon the streets or sidewalks of the City of El Paso, in front of any business house for the purpose of persuading any person, by signs carried, from entering said place of business for the purpose of transacting business therein." The difference in this and the Missouri ordinance is so marked as to make comment unnecessary.

In Fitts v. City of Atlanta, 67 L. R. A., 803, the ordinance prohibited anyone from making a speech on the streets without license from the city authorities, and made it an offense if one did so. Fitts so made a speech without license and was arrested and fined therefor. He refused to pay the fine and was taken and held in custody, and sued out a writ of habeas corpus seeking discharge, because of his constitutional right of free speech. · Among other things, the court held: "The primary object of streets is for public passage. They should be kept open and unobstructed for that purpose. If damage accrues to passers by reason of improperly allowing them to be used for other purposes, the city may become liable. The streets of the city are peculiarly within the police control for the purpose of preserving and protecting their use by the public as thoroughfares. A man has many constitutional and legal rights which he can not lawfully exercise in the streets of a city. Thus, every citizen has a right to lawfully acquire and hold personal property; but he has no right, constitutional or otherwise, to insist on storing his possessions in the street. Every man has the inalienable right to sleep and eat (if he has the edibles) but he has no constitutional right to make his bed or set his table in the street. Every man has not only the right to, but he should bathe and cleanse himself, and change his raiment, if he has a change. This is a duty imposed by his individual constitution, if not by that of his country. But there is no constitutional right on his part to perform his ablutions or exercise the most necessary demands of his nature in the public streets. At proper times and in proper places one may make loud noises, or shoot a gun, or test his lung power vocally to a considerable extent, without offending against any law; but there is no right, inherent or constitutional, to make vociferous outcries or practice gunnery in the street. If Professor Fitt's idea of constitutional law were correct, I see no reason why every citizen should not claim a right to use the public streets for the exercise of his trade, calling or profession, which may be much more essential to his welfare and that of the public than speechmaking by the plaintiff in certiorari,

however eloquent, and regardless of the soundness or unsoundness of his argument.

"If the Constitution, State or Federal, guarantees to Professor Fitts the right to make public speeches on the streets of Atlanta, why does it not also guarantee the same right to every lecturer who may not desire to hire a hall, and to every showman who wishes to exhibit on the highway, or to every mechanic, artisan, merchant, or other citizen, the right to ply his lawful vocation in the public thoroughfare? The constitutional right to exercise one's lawful vocation is quite as sacred, and often more important,. than the right to make speeches; but the exercise of either right must yield to the municipal power properly exercised over the streets for the primary objects for which they were established. If every one who has some constitutional right has also the constitutional right to exercise it in the streets of a city regardless of municipal regulations, these thoroughfares may soon become a gathering place of a numerous clan rivaling those adjuncts of modern exhibits, which, since the term was used during the Columbian Exposition at Chicago, in 1893, have come to be distinguished by the name of 'Midway Plaisance.' The right of the public in regard to the streets is to use them for passage as public highways, provided they are used lawfully for that purpose. But even the right of passage is subject to reasonable legislative regulations for the general good. Thus, idling and loitering in the public streets has generally been prohibited, and no one as yet doubted the constitutionality of such legislation." See Love v. Phalan, 55 L. R. A., 618; Com. v. Davis, 26 L. R. A., 712; and also Goldberg v. Stableman, etc., 8 L. R. A. (N. S.), 460; Jensen v. Cooks and Waiters, 4 L. R. A. (N. S.), 302; Chicago, etc., v. Barnes, 14 L. R. A. (N. S.), 1018.

The principles applicable to "picketing," made illegal as by this ordinance, has been held valid in other jurisdictions: See Ex parte Williams, 111 Pac. Rep., 1035; Beck v. Railway, etc., Teamsters, etc., 118 Mich., 497; Otis Steel Co. v. Local Union, 110 Fed. Rep., 698; Kundsen v. Benn, 123 Fed. Rep., 636, and other cases.

In Ex parte Williams, 111 Pac. Rep., 1035, such an ordinance even less specific than this was held valid. In the Beck case, supra, the court held: "To picket complainants' premises in order to intercept their teamsters or persons going there to trade is unlawful. It itself is an act of intimidation, and an unwarrantable interference with the right of free trade. . . . It will not do to say that these pickets are thrown out for the purpose of peaceable argument and persuasion. They are intended to intimidate and coerce!" In the Otis Steel Co. case, supra, the court held: "Whether this picketing has been accompanied with violence or not we need not consider. It was certainly one of the means used by this defendant organization to enforce its mandate. While picketing may not be an occasion of war, it certainly is an evidence that war exists, and the term is appropriately borrowed from the nomenclature of actual warfare. This system constantly kept up, in its nature leads to disturbance, and has a tendency to intimi-

date. . . . It is certainly true that this system of picketing, although it may not have been accompanied by violence on the part of those who have served as pickets, has and will do injury."

3. Relator further contends that said ordinance conflicts with articles 5244 and 5245 of the Revised Civil Statutes and article 1474 of the Penal Code, and is, therefore, void on that account. Articles 5245 (R. S.), and 1478, P. C., are exactly the same.

Whether these articles are in such conflict with said ordinance as to render it void is almost if not entirely, a question of fact to be determined by an inspection of them. In order to show clearly that they are not the same they will be quoted in parallel columns:

Article 5244 (R. S.) is: It shall be lawful for any and all persons engaged in any kind of work or labor, manual or mental, or both, to associate themselves together and form trades unions and other organizations for the purpose of protecting themselves in their personal work, personal labor, and personal service, in their respective pursuits and employments.

Article 5245 (R. S.), Idem, 1478, P. C., is: It shall not be held unlawful for any member or members of such trades union or other organization or association, or any other person, to induce or attempt to induce by peaceable and lawful means, any person to accept any particular employment, or quit or relinquish any particular employment in which such person may then be engaged, or to enter any pursuit, or refuse to enter any pursuit, or quit or relinquish any pursuit in which such person may then be engaged; provided, that such member or members shall not have the right to invade or trespass upon the premises of another without the consent of the owner thereof.

Section 2 of said ordinance is: It shall be unlawful for any person or persons to walk back and forth, loiter or remain or cause any person to walk back and forth, loiter or remain upon the streets or sidewalks in the City of El Paso, Texas, in front of any business house for the purpose of persuading any person or persons by signs carried from entering said place or places of business for the purpose of transacting business therein.

Section 3 of said ordinance is: Provided, that neither of the foregoing sections shall be held to render it unlawful for any member or members of any trade union, organization, or association or any other person to induce, or attempt to induce by peaceable and lawful means, any person to accept any particular employment or quit or relinquish any particular employment in which such person may then be engaged, or to enter any pursuit or refuse to enter any pursuit or quit or relinquish any pursuit in which such person may then be engaged; provided, that such member or members shall not have the right to invade or trespass upon the premises of another without the consent of the owner thereof.

It is unnecessary to here copy section 1 of said ordinance. It, and also the others, have already been copied herein. Section 3 of the ordinance makes it perfectly plain that it was the intention of the city council of El Paso in passing the ordinance to expressly avoid conflict with both the civil and penal articles copied above. It is clear that they accomplished such intent. What was made lawful by said articles was for any and all persons engaged in any kind of labor to associate themselves together and form trades unions for the purpose of protecting themselves in their personal work and in their respective pursuits and employments; and that it should not be held unlawful for

any member of said unions to induce or attempt to induce by peaceable and lawful means any person to accept any particular employment or quit the same in which such person may be engaged, or to enter any pursuit or to refuse to do so, or quit or relinquish any pursuit in which any such person may then be engaged.

As stated above, section 2 of said ordinance made it an offense and unlawful for any person to walk back and forth upon the sidewalks of said city in front of any business house for the purpose of persuading any person by signs carried from entering said place of business for the purpose of transacting business therein. A very distinct and different thing from that made lawful by articles 5244-5245 (R. S.). It seems so clear that the ordinance is not in conflict with said statute that it is deemed unnecessary to further discuss the question. Of course, if there had been such conflict between the statute and the ordinance the ordinance could not stand, but would be invalid. Appellant cites a number of cases to the effect that where there is such conflict the ordinance is invalid. It is unnecessary to cite or discuss them because the legal proposition laid down by them is correct.

4. The ordinance is not unreasonable, nor is it vague, uncertain, etc., so that it can not be understood. The ordinance seems clear, plain and easily understood. Instead of being unreasonable it is most reasonable, under the circumstances. Authorities above are quoted which show that the acts of relator which are denounced by said ordinance were clearly intended to intimidate and coerce all union labor folks and their sympathizers and others, from going into said restaurant or cafe and getting their meals or having any other business transaction with the owner or proprietor thereof. In other words, to injure and break up the proprietor in business. Such conduct as his would necessarily lead to disturbances, and had a tendency to intimidate and prevent all persons from entering said restaurant and would naturally injure the proprietor in his business. There can be no doubt but that the proprietor or owner of said restaurant had a right to conduct his business to suit himself and to employ union or non-union laborers as suited him and no one has the right to injure or disturb his business because he so chose to run it. The fact that his restaurant abutted upon the portion of the sidewalk where the relator was undertaking to injure and disturb him and his business of itself would give him some rights. It was the duty of the City of El Paso by such an ordinance to protect him in the conduct of his business, otherwise the city would not have been doing its duty to him and other citizens "to preserve and enforce good government, order and security of the city and its inhabitants, and to protect the lives, health and property of its inhabitants."

The ordinance is not invalid and void but, on the contrary, is valid and legal.

The relator is, therefore, remanded to the custody of the marshal of the City of El Paso.

*Relator remanded to custody.*