INTERNATIONAL ASS'N OF MACHINISTS UNION, LOCAL NO. 1488, et al. v. FEDERATED ASS'N OF ACCESSORY WORKERS et al.

No. 10666.

Court of Civil Appeals of Texas. Galveston. July 22, 1937.

Rehearing Denied Oct. 7, 1937.

Sewall Myer, of Houston, for appellants.

Escar R. Wren, of Houston, for Federated Ass'n of Accessory Workers.

Fulbright, Crooker & Freeman, of Houston (Chas. A. Perlitz, Jr., and W. H. Marshall, both of Houston, of counsel), for intervener Beard & Stone Electric Co.

GRAVES, Justice.

This appeal is from an order entered in chambers on June 2 of 1937 by the judge of the Sixty-First district court of Harris county, after a full hearing of all evidence, pleadings, and argument of counsel presented or tendered by all three of the parties thereto, that is, the plaintiffs, the defendants, and the intervener, in the trial court, wherein the appellants here, who were such defendants below, were, at the

behest of the plaintiffs and the intervener, who together constitute the appellees in this court, temporarily enjoined and restrained in his verbis as follows:

"The court having heard all of said evidence and the argument of counsel, and being fully advised, finds that International Association of Machinists Union, Local No. 1488, and its officers, R. C. Cole, J. C. Bain, and their and each of their agents, attorneys, and servants should be enjoined and restrained from picketing or causing to be picketed the premises or business establishment of Beard and Stone Electric Company, and from congregating or assembling in the vicinity thereof, and from threatening or in any manner intimidating, coercing, or harassing, employees or customers of Beard & Stone Electric Company, and from attempting to do any of such things, and from in any manner interfering with the plaintiffs or any of them in pursuit of their employment with Beard and Stone Electric Company as employees thereof; it is accordingly ordered and decreed that all of said named defendants, and each of them and their and each of their agents, attorneys, and servants, are enjoined and restrained, and commanded to desist from doing or causing to be done, and from aiding and abetting in the doing of any of said things, all until the further order of this court, upon plaintiffs and intervenor executing a bond in the sum of $500.00 in favor of said named defendants, conditioned as the law requires, and with two or more good and sufficient sureties. * * *

"This order and decree will remain effective until the further order of this court, and may be amended, enlarged, restricted, or altered, by the court at any time pending final hearing in this cause. To which the defendants in open court excepted."

Elsewhere in the judgment the appearances of the parties at such hearing were thus recited: "And at the time set came all of the plaintiffs, Federated Association of Accessory Workers, L. D. Stewart, Leo Havard, W. G. Briggs, L. Schomer, F. Games, C. O. Spraggins, and I. L. Feraday, by their attorney of record, Escar R. Wren, Esq., the individual plaintiffs appearing also in person, and came the defendants, International Association of Machinists Union, Local No. 1488, Earl Melton, Frank Laudermann, R. C. Cole, and J. C. Bain, by their attorney, Chas. E. Heid-

ingsfelder, Jr., Esq., and filed answer herein, and the individual defendants named appeared also in person, and came Beard and Stone Electric Company, a corporation, by its attorney, and asked leave to intervene, and such leave being granted, said corporation filed its petition in intervention in this cause."

On the appeal the appellants are represented of record by Hon. Sewall Myer in place of their attorney as named below, whereas the appellees are respectively represented as before.

Inveighing here against the quoted writ, the appellants, in the main, contend:

That neither the plaintiffs' petition nor prayer were sufficient to entitle them to such injunctive relief, that the order itself is void, in that it is not only vague, uncertain, and unduly broad, but, further, in express violation of R.S. art. 5153, and of section 27, article 1, of the Constitution of Texas, in denying them the rights of "peaceable picketing" and "peaceable assembly" vouchsafed to them by those statutory and constitutional provisions, that the new federal statute known as "The Wagner Act" (29 U.S.C.A. § 151 et seq.) has no application to the situation here presented, and could have furnished no proper basis for the issuance of this complained of writ, for the reasons that, not only was the district court of Harris county without jurisdiction to apply that federal statute to this litigation in any manner, but intrinsically it did not prevent "the defendants from peaceable picketing and assembling and of inducing by peaceable means the plaintiffs to relinquish their employment with Beard & Stone Electric Company"; finally, that no facts were proven upon this hearing "which show that interstate commerce is so directly and intimately affected as to make the Wagner Act applicable to this situation."

On consideration of the appeal, it is determined not only that none of these objections are well taken, but further that the order was well within a sound discretion on the part of the learned trial judge; since the able counsel for the appellants did not participate in the trial, it seems to this court that he has apparently misconceived at least some of the evidence thereon; after a painstaking study of the record, it is found to contain evidence which justified, if it did not require, the finding of these controlling facts, among others:

(1) Prior to the institution of this action, the appellee Beard & Stone Company, was not what is commonly known as an automobile dealer or automobile repair shop but was a corporation doing a different kind of business, that is, that of an automobile jobbing and accessory house, further performing certain mechanical services connected with the accessories it handled; as such concern, it then had 33 or 34 employees working for it in servicing, assembling, or handling, automobile accessories; of this total number of its employees, at the time this suit was instituted, 9 had become members of the appellant union, while perhaps 27 of them, or at least more than 20, had organized themselves into the appellee association.

(2) On or about April 16 of 1937, the appellant union called a general strike against all of the automobile dealers in the city of Houston, immediately placing numerous pickets in and about the business establishments there of those particular concerns; this strike was not called against appellee Beard & Stone Company, it not being in the business of such an automobile dealer; on such calling of that strike, however, all Beard & Stone employees, since it did considerable business with the automobile dealers against whom the strike was called, upon being called together for that purpose, agreed that it was advisable for Beard & Stone to close its business for an indefinite time on account of the strike, and to give them and their employer an opportunity to determine just what should be done in reference thereto; upon that date, that is, prior to May 4 of 1937, no pickets in furtherance of such strike having been placed up to that time at or near Beard & Stone's place of business, that concern joined with other jobbing companies of its same sort, as well as with certain automobile dealers, in an advertisement published in the Houston newspapers, inviting and requesting their respective mechanics to return to work; immediately upon the appearance of this advertisement, the appellant union placed pickets, on May 4 of 1937, in furtherance of the strike it had so called, at the business establishment of appellee Beard & Stone, as well as at those of other jobbing accessory houses like it, appellant Cole, as a representative of that union, testifying herein that no strike had ever been called against appellee Beard & Stone, and that the only reason he had caused such pickets in furtherance

thereof to be placed at its business premises was because its name had so appeared on that advertisement.

(3) The stated organization of the appellee association by the more than 20 Beard & Stone employees occurred sometime between April 16, the date appellant had so called its strike, and May 10, without the knowledge or participation thereof of their employer; shortly after such organization, after the vote indicated supra, and for the purpose there stated, the Beard & Stone plant was closed and so remained until on or about May 13 thereafter, when the company reopened its business and invited all its employees to return to work; they all accepted and did so, except some or all of those who had so become members of the appellant union, under a new contract wherein Beard and Stone recognized their federated association as the collective bargaining agency.

(4) The picketing appellants caused of the appellee Beard & Stone's premises continued uninterruptedly from May 4 of 1937 until the learned trial judge entered the order stopping the same, which is herein appealed from; this despite the fact that appellant union's representatives made an ad interim appeal to the National Labor-Relations Board under the new federal statute, known as the Wagner Act, in an attempt to settle the matters involved in the strike by the method described in that act; in that proceeding its representative, Mr. Melton, filed charges with such National Board against the Beard & Stone Company, to the effect that it was engaged in unfair business practices within the meaning of the Wagner Act, alleging therein that, although it was itself in no way involved in the pending strike appellant had instituted against the automobile dealers, yet it had closed its plant because of the strike and had locked out its employees because of Beard & Stone's sympathy for such automobile dealers; further, that the Beard & Stone Company had refused to recognize appellant union as the collective bargaining agency of its employees, having attempted to form a company union among them itself; in that proceeding the Wagner Act was further invoked in this controversy by appellant union in a petition to such National Labor-Relations Board asking that it conduct an election among Beard & Stone's employees to determine which organization, the appellant union or the appellee federation, represent-

ed a majority of the company's employees competent to determine the bargaining agency dispute; the upshot of such charges against the Beard & Stone Company was that, after a hearing at Houston before Dr. Elliott, Regional Director of the National Labor-Relations Board, who found no basis for such complaints, Mr. Melton accepted Dr. Elliott's invitation to do so, and thereupon withdrew all of the charges in that behalf he had so previously made against the Beard & Stone Company; after such hearing it was agreed that Beard & Stone would invite all its employees, inclusive of those belonging to appellant union, back to work, which it did in a letter written at Dr. Elliott's suggestion, Mr. Melton himself then stating that such employees were free to go back to work if they so desired and that he would undertake to have the pickets removed from the Beard & Stone premises; however, as indicated supra, none of such appellant member employees ever did return, nor were such pickets removed until the court so ordered.

(5) The picketing of Beard & Stone's premises was never a peaceful nor legal one, in that:

(a) No strike had ever been called against the Beard & Stone Company itself, on the contrary appellant union's representative having admitted that it had not, and that he had caused the picketing of that company's business because of his conclusion that it was in sympathy with the automobile dealers as a result of its having joined with them in the published advertisement, recited supra;

(b) While no actual violence occurred there, the pickets directed opprobrious epithets both towards the employees and the customers of Beard & Stone, and threatened them on several occasions with the use of force and violence, the company being compelled on one occasion to call in the police to prevent their employees from being harmed while going across the street to get their lunches;

(c) The picketing resulted in such a deleterious effect on the employees as to make them unsettled and uneasy in their work, and caused the dropping off of the company's business to the extent of about 50 per cent.

■ Since the trial judge will be deemed to have made the stated findings in support of his judgment, it seems plain from their import that his temporary order merely properly preserved the status quo of this controversy until a trial on the merits, and was not obnoxious to any of the objections leveled against it; indeed, appellants are in no position in this court to complain, either that the order was vague, indefinite, or too broad, or that the Wagner Act does not apply here, since the record discloses, not alone that the decree was submitted to and approved as to form by the appellants' counsel before it was issued by the trial judge, but further that, in addition to appellants' having themselves first invoked that federal statute, the cause was tried below, by the acquiescence of all parties, on the theory that such act did apply; wherefore, they cannot so change fronts between trial and appellate courts. 3 Texas Digest, Appeal and Error, page 180, ⬡⟩171(1).

■ Neither were any of the properly applied and construed provisions of R.S. art. 5153, contravened, since that statute condones picketing, or other acts of persuasion, by union members only if such acts are peaceful, lawful, and the persuasion has the objective of inducing others to accept, alter, quit, or relinquish, any pursuit or employment; but it does not give them privilege or immunity where their picketing is neither in pursuit of a lawful purpose, nor in a peaceful manner, nor where its purpose is to discourage the victim's customers from trading with it, as the trial judge may well have further concluded was the fact in this instance. 15 Texas Law Review, 346; Cooks', etc., Local Union v. Papageorge (Tex.Civ.App.) 230 S. W. 1086; Webb v. Cooks' Union (Tex.Civ. App.) 205 S.W. 465; Culinary Workers' Union v. Fuller (Tex.Civ.App.) 105 S.W. (2d) 295; International Ladies' Garment Workers' Union v. Dorothy Frocks Company (Tex.Civ.App.) 95 S.W.(2d) 1346; Old Dominion S. S. Co. v. McKenna (C. C.) 30 F. 48; Central Metal Products Corporation v. O'Brien (D.C.) 278 F. 827; Pickett v. Walch, 192 Mass. 572, 78 N.E. 753, 6 L.R.A.(N.S.) 1067, 116 Am.St.Rep. 272, 7 Ann.Cas. 638; Ex parte Stout, 82 Tex.Cr.R. 183, 198 S.W. 967, L.R.A.1918 C, 277; Reynolds v. Davis, 198 Mass. 294, 84 N.E. 457, 17 L.R.A.(N.S.) 162; Dorchy v. Kansas, 272 U.S. 306, 47 S.Ct. 86, 71 L.Ed. 248; Duplex Printing Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196.

As these cited authorities make manifest, appellants' reiterated contention, that their picketing was permissible because of a claimed dispute between the 9 disaffected ones of them and Beard & Stone as their employer, is clearly unsound, because of the further presumed finding on the facts that it was being conducted both for an illegal purpose and in an unlawful manner; see especially the Papageorge and Ladies' Garment Workers' Union Cases, supra.

Indeed, as indicated, the established law seems to go even further than that and to now be, as thus briefly stated in the 15th Texas Law Review citation, at page 346: "More specifically in cases where an injunction against picketing is sought, two questions arise: (1) is the picketing for a lawful purpose, and (2) if so, is it being carried on by legal or illegal means? The injunction will be granted, if either the purpose or the means employed to achieve that purpose are found to be unlawful. The action of the pickets is said to be justifiable, if the purpose is lawful and the means legal."

Wherefore, if it could be said that the picketing here so indulged in was for a lawful purpose, the further hurdle of its not having been carried out by peaceful or legal means was not negotiated; even as the prophet Jeremiah cited those accused of having departed from the old paths to the undoing of that fair land as having yet attempted to smoothe over the hurt to the "Daughter of Zion," by saying: "Peace, peace; when there is no peace," the appellants here, in the face of the aggression, intimidation, and interference with non-striking and bona fide employees and customers of the appellee company, so testified to in this instance, even to the very doors of its plant, yet insist that their picketing was peaceful within the meaning of R.S. art. 5153, and their assembling of the same permissible character as that reserved to all citizens of Texas under section 27, article 1 of our Bill of Rights (Const.).

It is deemed unnecessary to further extend the discussion, since the ultimate issue in this court is merely whether or not a sound discretion upon the part of the learned trial judge was abused; Harding v. Pearson & Co. (Tex.Com.App.) 48 S.W.(2d) 964; Southland Life Ins. Co. v. Egan, 126 Tex. 160, 86 S.W.(2d) 722; Nagy v. Bennett (Tex.Civ.App.) 24 S.W.

(2d) 778; Midland B. & L. Ass'n v. Sparks, etc., Church (Tex.Civ.App.) 35 S.W.(2d) 774; 3 Texas Jurisprudence, 1077; 24 Texas Jurisprudence, 313, 314, § 253; Scanlan v. Houston Lighting & Power Co. (Tex.Civ.App.) 62 S.W.(2d) 537; under the holding that such an abuse has not been shown, an affirmance will be ordered.

Affirmed.