**INTERNATIONAL ASS'N OF MACHINISTS LODGE 1488 v. DOWNTOWN EMPLOYEES ASS'N et al.**

No. 11911.

Court of Civil Appeals of Texas. Galveston.

July 31, 1947.

Rehearing Denied Oct. 9, 1947.

Daffan & Proctor, of Houston, for appellant.

Fowler & Conn and Thomas M. Ryan, both of Houston, for appellee Downtown Chevrolet Co.

Lawrence P. Gwin, of Houston, for appellee Downtown Employees Ass'n.

CODY, Justice.

This is an appeal from the action of the trial court in granting a temporary injunction restraining appellant International Association of Machinists Lodge 1488, and its officials, from picketing the premises of Downtown Chevrolet Company in Houston, Texas; and as such was advanced for hearing on the docket of this Court. The appellees are the Downtown Employees Association, who instituted the suit, and the Downtown Chevrolet Company which intervened. For convenience, the appellee Downtown Employees Association will be referred to as the Association, the Downtown Chevrolet Company as the Company, and the appellant as the Union.

On April 30, 1947, after a hearing lasting four days, the trial court temporarily, and pending final hearing, enjoined the Union from:

(a) Interfering with the Association or its members, or with the Company or any of its employees or customers by picketing the premises of the Company at or adjacent to its place of business at the corner of Austin and McKinney Streets in Houston.

(b) Preventing by picketing, violence, threats, intimidation, coercion, or persuasion, any person from entering or leaving the Company's place of business, or from becoming a customer of the Company.

(c) Picketing, assembling, congregating, gathering about or loitering near the premises of the Company.

It is undisputed that the picketing, which was so restrained by the temporary injunction, was conducted in a peaceful manner. The Union requested that the court file conclusions of fact and law, which request was not complied with—presumably because the appeal was from an order granting a temporary injunction.

The Union predicates its appeal upon four points, as follows:

1. The trial court committed an abuse of discretion in granting the injunction because the lawful union activities engaged in by appellants were in the exercise of their rights of free speech and assembly under the Constitutions of the State of Texas and of the United States.

2. The trial court erred in granting the temporary injunction because the undisputed evidence shows that the peaceful picketing engaged in by appellant Union resulted from and was occasioned by the existence of a bona fide labor dispute between the appellant-Union and appellee-employer.

3. The trial court committed an abuse of discretion in granting the injunction restraining picketing in the complete absence of any unlawful or illegal activities engaged in by appellant-Union, or anyone acting on its behalf or in concert with it, in connection with such picketing.

4. The trial court committed an abuse of discretion in granting the injunction in favor of the appellees in the absence of any damage or injury.

■ It is well settled that the granting or refusing of a temporary injunction is within the sound discretion of the trial court and is not reviewable upon appeal unless it clearly appears from the record that there has been an abuse of such discretion. Harris County v. Bassett, Tex.Civ. App., 139 S.W.2d 180, 183, writ refused; International Ass'n, etc., v. Federated Ass'n, etc., Tex.Civ.App., 109 S.W.2d 301, 305, writ dismissed. In reviewing the evidence upon which the trial court acted in granting an injunction to plaintiffs the court stated, in Hotel & Restaurant, etc., v. Longley, Tex.Civ.App., 160 S.W.2d 124, 126: "Regarding the evidence we are required, of course, to give effect to such as was undisputed and not subject to any qualification or variance as the possible result of the judge's exercise of his power to determine its weight or to determine the credibility of the witnesses. Of all disputed evidence we are required to consider only that most favorable to the plaintiffs. Further, of all reasonable inferences which may be drawn from such evidence. We are required to adopt only those, if any, favorable to plaintiffs." In other words, on ap-

peal the evidence must be construed as sustaining the action of the trial court in granting or refusing a temporary injunction unless such evidence was of the character to compel a contrary conclusion from that on which the trial court presumably acted.

Applying the test to the evidence just stated, there was evidence before the court from which it could have been concluded: That the Union undertook to organize the Company's employees, and to obtain from the Company a contract which required that all employees belong to or join the Union. That during the month of November, 1946, which was some months after the Union had begun its organization work, an employee by the name of Olin Rutherford, who had formerly belonged to the Union, considered that an independent or company union was more desirable. By the nineteenth of November he had secured 17 out of the 25 employees of appellee Company, and so informed the management, but was by the management informed that his Association would not be dealt with until it had been determined by an election that such Association represented a majority of its employees. That thereupon Rutherford called a meeting and invited all the employees to attend, and all of said employees except three did attend, and a majority of those attending voted in favor of the Association and against the Union to be their bargaining representative with the management. That thereafter, on the afternoon of November 27, Snelling, acting for the Company, offered a contract to the entire group of employees. That 13 or 14 of the employees signed the contract on that day, and before the contract was returned to Snelling on November 29th it had been adopted by 23 of the employees; when it was returned to Snelling on November 29th he then formally signed the contract.

The Union's version of the matter was quite different. The trial court did not accept its version and no purpose would be served in detailing what their version was except insofar as is necessary to explain their contention on appeal. On November 22, 1946, Lewett Gregg, who had been an employee of the Company for years, was discharged. He had been the most active of the employees on behalf of the Union. The evidence of appellee was to the effect that he was not discharged because of his activity on behalf of the Union. The evidence was sufficient to have supported the inference that he was discharged because of such activity, but, as indicated, the appellees' evidence to the contrary was substantial. The evidence further showed that the Union, on the night of November 27, authorized a strike against the Company unless Lewett Gregg was re-instated with back pay and unless the Company signed the contract under which all employees must belong to the Union. In this connection it was undisputed that the compensation paid to all employees by the Company was 50% of the labor charge on the work performed. On November 28, which was Thanksgiving Day, Snelling was informed that a strike would be instituted on the following day unless Gregg was so re-instated and the contract with the Union signed, and Snelling made it clear that he was through with the Union. According to the Union's version, the management of the Company shilly-shallyed with the Union until November 27th when Snelling presented the contract to the Association. And it is the Union's contention that the strike was instituted before the contract became effective, in that the same was not signed by Snelling until November 29th.

On November 29, 1946, the Union placed pickets on the sidewalks in front of the entrance to the Company's place of business. At first the sign carried by the pickets was to the effect that the Company was unfair to the Union, Lodge 1488. Later the sign also stated that the Association was unfair. The picketing was continued for some five months, and until restrained by order of the Court which is here appealed from. From the evidence it could be inferred that as a consequence of the picketing the Company sustained a loss of between 35% and 40% of its gross business, and that the employees sustained a loss in excess of $33\frac{1}{3}\%$ of their wages. The contract between the Company and the Association incorporated the provision that the employees should receive 50% of the labor charge on the work performed.

■ Considering the evidence in the light most favorable to the appellees, as by law it must be considered in determining whether the trial court abused his discretion in issuing the temporary injunction, the court was warranted in concluding that the contract with the Company was entered into between the Company and the Association prior to the picketing, or even the determination to picket. It is the contention of appellants that the injunction deprived them of their constitutional right to exercise free speech within the ruling made in A.F. of L. v. Swing, 312 U.S. 321, 61 S.Ct. 568, 570, 85 L.Ed. 855, wherein it was held: "The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in Thornhill's case (Thornhill v. Alabama, 310 U.S. 88, 60 S. Ct. 736, 84 L.Ed. 1093)."

■ But we held in the first appeal (which was from the granting of a temporary injunction) in Carpenters and Joiners Union etc. v. Ritter's Cafe, Tex.Civ. App., 138 S.W.2d 223, 227: " * * * no right of free speech under the fundamental law of either nation or state is transcended by an injunction restraining the picketing of a place of business by persons (whether members of a labor organization or union, or not) who seek either to prevent the public from trading with the picketed place, or to compel its owner to break a contract which he has with some such dis-associated third person." This holding was quoted with approval in the appeal in the same case from final judgment, reported in Tex.Civ.App., 149 S.W.2d 694, 697. A writ was denied by the Supreme Court of the United States from the holding made on the second appeal. 316 U.S. 708, 62 S.Ct. 1038, 86 L.Ed. 1775. Under the evidence in this case, it cannot be said that the court by issuing its temporary injunction to stop the picketing pending the trial on the merits violated the constitutional rights of appellants to free speech. For such constitutional rights were limited by the constitutional rights of appellees. See Carpenters and Joiners Union cases, supra. A case largely in point on the facts with the facts in this case was the holding of this Court through Justice Graves in International Association of Machinists Union Local No. 1488, v. Federated Association of Accessory Workers, Tex.Civ.App., 109 S. W.2d 301, writ dismissed.

■ The question is not before us whether, had the object of the picketing been solely to induce the Company to re-instate Lewett Gregg in his employment with back pay, the order granting the temporary injunction would have constituted an abuse of discretion. The demand for his reinstatement was coupled with the demand for the Company to sign the contract with appellants. The court was warranted in concluding that the picketing did cause substantial loss to the Company and to the members of the Association, and would continue to cause such loss.

For the reasons given appellants' points 1 to 4, inclusive, are overruled. Finding no reversible error in the judgment, it is ordered that the same be affirmed.

Affirmed.