

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00209-CV

---

JEREMY SCOT NELSON, APPELLANT

V.

THE CITY OF LUBBOCK, APPELLEE

On Appeal from the 237th District Court
Lubbock County, Texas
Trial Court No. 2021-CV-0019, Honorable Les Hatch, Presiding

April 28, 2025

MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant, Jeremy Scot Nelson, appeals from the trial court's orders granting judgments in favor of Appellee, the City of Lubbock, on its Plea to the Jurisdiction and Motion for Summary Judgment and No-Evidence Motion for Summary Judgment in this personal injury suit. On appeal, Nelson asserts the trial court erred by granting the plea to the jurisdiction and motion for summary judgment filed by the City. We affirm.[1]

---

[1] In light of our disposition of Nelson's first issue, it is unnecessary to consider his remaining issues. *See* TEX. R. APP. P. 47.1.

**Background**

Nelson sued the City of Lubbock under negligence theories due to injuries he sustained when a City garbage truck ran over his legs. The incident occurred in the morning hours of February 24, 2020, after Nelson, seeking shelter from freezing temperatures, lay down on carpet next to a dumpster in a public alley.

Sometime between 6:52 a.m. and 7:30 a.m., City employee Gavin Martinez was operating a garbage truck on his morning collection route. Martinez entered the alley without headlights in conditions he described as "in between" night and day. As he approached the dumpster to align his truck, Martinez observed surrounding debris—a common occurrence he had previously reported at least four times at this location. Martinez did not see Nelson. Rather than avoiding the debris as his training required, Martinez drove through it, running over Nelson's legs. Nelson's active pleading—a Second Amended petition filed in February 2023—alleged: (1) Martinez was negligent to Nelson because he "failed to stop the garbage truck before running over unknown material in the alleyway," and thereby injuring Nelson;[2] and (2) the City breached a duty to use reasonable care in selecting, hiring, training, supervising, and retaining its employees.

In March 2023, the City filed three dispositive motions: a Motion for Summary Judgment, a No-Evidence Motion for Summary Judgment, and a Plea to the Jurisdiction. The City argued, among other things, that it retained its immunity from suit as a matter of

---

[2] Nelson further alleged, "Had Mr. Martinez exercised proper care by driving in a slow, cautious manner and exiting his vehicle to inspect unknown materials in the road before running them over . . . Mr. Nelson would not have been harmed."

law because it did not owe a legal duty to Nelson "to discover his whereabouts as he was sleeping underneath a pile of debris in the public 'right of way.'" Nelson responded that Martinez breached his duty by driving over visible debris contrary to his training.

After hearing arguments, the trial court granted all three of the City's motions on May 12, 2023. Nelson timely appealed, challenging both the jurisdictional ruling and the summary judgments.

**Analysis**

Subject matter jurisdiction forms the foundation of a court's power to hear and decide a case. *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020). In Texas, the doctrine of sovereign immunity plays a crucial role in determining this jurisdiction—it prevents courts from hearing lawsuits against certain governmental entities unless the government has explicitly consented to being sued. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). This immunity protection extends to cities, including the City of Lubbock, when they perform essential governmental functions like garbage collection and disposal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(6); *City of San Antonio v. Pollock*, 284 S.W.3d 809, 815 (Tex. 2009).

The Texas Legislature created specific, limited exceptions to sovereign immunity through the Texas Tort Claims Act (TTCA), such as for certain claims of negligence of an employee acting within the scope of his employment when personal injury arises from the operation of motor-driven vehicles and "the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). Similarly, immunity is waived for personal injury caused by a condition or use of tangible

3

personal property "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2). The question in this case is whether the State, via the Tort Claims Act, expressly consented to suit under these conditions. *See Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 284 (Tex. 2022).

To determine whether immunity has been waived, we must assess whether Nelson's pleaded facts (taken as true) demonstrate the City, through the acts of its driver-employee Martinez, was negligent under the common law definition. *See VIA Metro. Transit v. Meck*, 620 S.W.3d 356, 369 (Tex. 2020). The "threshold question" in this analysis is determining what legal duty, if any, was owed by Martinez to Nelson. *Elephant Ins. Co., LLC v. Kenyon,* 644 S.W.3d 137, 144 (Tex. 2022). Without the existence of a legal duty, no liability can exist in negligence, regardless of Martinez's conduct. *See Houston Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 582 (Tex. 2023); *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993) (holding the existence of legal duty to be the "prerequisite to all tort liability"). This is a question of law for the court to decide. *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017); *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404–05 (Tex. 2009).

Here, we are asked to determine whether Texas drivers owe a duty to inspect and avoid alley debris that is large enough to contain concealed persons.[3] Nelson does not point to any statute that would impose such a duty, nor has any Texas court previously

---

[3] In his brief, Nelson frames his claim broadly, arguing the City's driver had general duties to "obey traffic laws," "use reasonable care," and "be vigilant." However, the essence of his complaint is more specific: that Martinez was negligent by making "the conscious decision to drive over a large obstruction in the road"—namely, "a large pile of debris . . . that was large enough to conceal an individual." As Nelson's counsel conceded at oral argument, the legal duty he proposes would require drivers to stop and examine any object in an alleyway capable of concealing a person, such as a cardboard box potentially hiding a child.

4

decided this question. Therefore, we must determine whether such a duty exists under common law, by weighing:

> the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. We also consider whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm.

*Mendez*, 671 S.W.3d at 583 (*quoting Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)) (cleaned up). We assess those factors below.

Risk, Foreseeability, and Likelihood of Injury

We first consider the risk, foreseeability, and likelihood of injury that individuals such as Nelson would suffer as a result of drivers driving over uninspected alley debris. *See Phillips*, 801 S.W.2d at 525 (establishing foreseeability as the dominant consideration in duty analysis). We examine which party has superior knowledge of the dangerous conditions and "the best opportunity to avoid the harm." *Kenyon*, 644 S.W.3d at 150–51. Here, it is important to note that the hazardous condition is not the existence of the alley debris itself. Its presence did not cause injury to Nelson but is alleged to have *concealed* the condition that led to harm. *Nelson's presence* on or under that debris was what led to his injury. Such a condition was created by Nelson's own voluntary actions, not by Martinez or the City.

This fact is important to our analysis of foreseeability and risk of injury. "[T]here is neither a legal nor moral obligation to guard against that which cannot be foreseen." *Id.* at 149 (cleaned up). The Supreme Court of Texas's analysis in *Kenyon* is instructive. There, an insured motorist lost control on a rain-slick road and crashed her vehicle into a

5

guardrail. After calling her husband and insurance company, she asked the insurance representative if they wanted pictures of the accident. When the husband arrived to take photographs at the scene, he was struck and killed by another vehicle that also lost control on the road. The Supreme Court held the insurance company did not owe a duty to warn about the obvious dangers of standing near a roadway, noting that the husband and wife "were better situated to contemporaneously assess their physical safety and act accordingly." *Id. at* 150.

While it is foreseeable that debris may accumulate in alleys, it is not reasonably foreseeable that such debris would conceal a human being. As the North Carolina Supreme Court aptly observed, "A driver of an automobile may anticipate that other travelers will be using the highway . . . . However, it would seem to be too much to require him to anticipate the highway would be used as sleeping quarters." *Battle v. Chavis*, 147 S.E.2d 387, 390 (N.C. 1966). Just as the plaintiff in *Kenyon*, Nelson, who chose to lie down next to a dumpster in a public alley, was in an equal if not greater position than Martinez to assess and avoid the dangers associated with placing himself in an area regularly traversed by garbage trucks and other vehicles. 644 S.W.3d at 149–50.

Social Utility, Burden, and Consequences

While foreseeability is the "dominant consideration" in our duty analysis and weighs heavily against Nelson, the remaining factors—social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant—further reinforce the conclusion that no duty was owed to Nelson.

6

The social utility of garbage collection services is paramount to public health and safety. As an essential governmental function explicitly recognized by the Legislature, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(6), sanitation services are necessary to prevent disease and maintain community cleanliness. Garbage collection trucks regularly navigate roadways to empty dumpsters, performing a critical public service that benefits all citizens. By contrast, Nelson's interest in using alley debris as a form of shelter is of minimal social utility and contradicts the intended purpose of public rights-of-way designated for vehicular traffic. For more than a century, Texas courts have recognized that while "[e]very man has the inalienable right to sleep," there is "no constitutional right to make his bed" in the street. *Ex parte Stout*, 198 S.W. 967, 969 (1917).[4]

Moreover, the burden imposed on drivers by requiring inspection of all alley debris would be impractical. The record shows debris frequently accumulated around dumpsters in this alley—a condition Martinez had reported numerous times. Requiring drivers to exit their vehicles to inspect each pile of debris they encounter would not only impede travel but would create new safety hazards by requiring drivers to place themselves in vulnerable positions outside their vehicles, such as risk of being struck by other vehicles (*see Kenyon*, 644 S.W.3d at 150) and potentially dangerous materials and persons. Adopting the legal duty Nelson proposes would also expand potential liability without meaningfully improving public safety.

---

[4] *See also Barnes v. Horney*, 101 S.E.2d 315, 317 (N.C. 1958) (holding that while pedestrians have the right to use highways, the right to walk does not carry with it the right to lie down and go to sleep); *Dickson v. Chattanooga Ry. & Light Co.*, 237 F. 352, 356 (6th Cir. 1916) (holding that while people may use railroad tracks as crossings, companies have no duty to maintain a lookout for people that are using the track as a bed).

Weighing all relevant factors, we conclude no legal duty existed requiring Martinez to inspect alley debris for concealed persons. Without establishing that the City owed him a legal duty—the threshold element of his negligence claim—Nelson cannot demonstrate the City would be liable under Texas law as required by the TTCA's waiver provisions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021.[5]

## Conclusion

Because Nelson cannot establish the City owed him a legal duty, an essential element of his negligence claim, we conclude the trial court properly determined it lacked subject matter jurisdiction over this case. We therefore affirm the trial court's judgment dismissing Nelson's claims against the City.

Lawrence M. Doss
Justice

---

[5] Nelson also argues Martinez was negligent for failing to operate the truck's headlamps; however, he concedes the alley debris was visible at the time of the incident.

8